William E. FELTON, Plaintiff–Appellee,

v.

**BOARD OF COMMISSIONERS OF the COUNTY OF GREENE and Robert F. Crowe, in his official capacity, Defendants–Appellants.**

No. 92–3105.

United States Court of Appeals,
Seventh Circuit.

Argued May 12, 1993.
Decided Sept. 10, 1993.

Brenda Franklin Rodeheffer (argued), Indianapolis, IN, for plaintiff-appellee.

James S. Stephenson (argued), Michael R. Morow; Stephenson & Kurnik, Indianapolis, IN, Marilyn Hartman, Hartman & Paddock, Bloomfield, IN, for defendants-appellants.

Before FLAUM and RIPPLE, Circuit Judges, and WILL, Senior District Judge.*

WILL, Senior District Judge.

Pursuant to 42 U.S.C. § 1983, the plaintiff in this suit challenged the loss of his job as the Veteran's Service Officer for Greene County, Indiana, claiming that it resulted from his affiliation with the Republican Party. Finding that political affiliation was a motivating factor in bringing about the adverse job action, the district court entered judgment in favor of the plaintiff and against the Greene County Board of Commissioners and Commissioner Robert F. Crowe, in his official capacity. For the reasons stated below, we affirm the ruling of the district court.

## I.

## BACKGROUND

In 1985, plaintiff William C. Felton, an active Republican, was appointed to the position of Veteran's Service Officer ("VSO") for

Greene County, Indiana, by the Greene County Board of Commissioners (the "Board"). At that time, all three members of the Board were Republicans. Although Felton was not appointed for the 1986 term,[1] he was re-appointed in 1987 by an all-Republican Board. On November 15, 1988, Felton issued a memorandum to the Board requesting that he be retained (or re-appointed) as VSO for the 1989 term.

In the 1988 election, however, two Democrats—Robert Crowe and Lee Stone—were elected to replace two Republican Commissioners, thus altering the partisan representation on the Board. The third Commissioner—William Bailey—was a Republican who remained in office because his term had not expired. On December 14, 1988, newly-elected Democrat Commissioners Stone and Crowe sent a letter to Felton, informing him that his position as VSO would terminate on December 31, 1988. Pursuant to the letter's instructions, Felton applied for the VSO position with the new Board. Felton, whose past performance as VSO was apparently satisfactory, received no further communication from the Board.

Norman Sullivan was a registered Democrat who had previously unsuccessfully sought public office in Greene County. Around this time, he was notified that, effective December 31, 1988, he was going to lose his job as manager of a local video store. Having read about the potential opening in the VSO office in the local newspaper, Sullivan submitted an application for the position on December 23, 1988.

For many years, it had been the tradition in Greene County to distribute jobs based on political affiliation to people who were either politically active or family members of the Commissioners. Commissioner Crowe (without having seen Sullivan's application for the VSO position and without knowing that Sullivan was about to lose his job at the video store) contacted Sullivan to discuss the VSO position opening. Crowe had known Sullivan

---

*The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

1. Due to a family dispute with his brother-in-law, who was one of the Commissioners, Felton was demoted in January 1986 to a VSO driver position, and then terminated in July 1986.

for some time and was well aware of his political affiliation. Upon learning that Sullivan had applied for the job, Crowe advised Sullivan that he would attempt to get him appointed.

On January 2, 1989, Sullivan took physical control of the VSO office. The following day, he hired John Achors as a driver for the office. However, Sullivan was not formally appointed as the VSO until he obtained the unanimous vote of the three-member Board on January 4, 1989. This decision to appoint Sullivan was never reconsidered by the Commissioners, although they did reconsider their decision to terminate certain Greene County highway workers. Commissioner Bailey first met Commissioners Stone and Crowe at the first Board meeting, held on January 4, 1989. At that time, he was aware that Sullivan was already performing the functions of the VSO position and that Felton had been removed. Commissioner Bailey voted for everyone nominated by Commissioners Stone and Crowe, claiming that his vote merely "agreed with the choice." Magistrate Judge's Findings of Fact, Conclusions of Law and Decision (the "Decision"), at 15.

The plaintiff brought this action to challenge the loss of his job as Greene County VSO pursuant to 42 U.S.C. § 1983, alleging that he was replaced after the 1988 election as the result of his political affiliation with the Republican Party. Felton argued that this violated his rights to freedom of speech and political association under the First and Fourteenth Amendments. The district court applied the political patronage analysis articulated in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), to find that Felton's political affiliation with the Republican party was a substantial or motivating factor in Commissioners Stone's and Crowe's decision not to re-appoint Felton, in violation of his First Amendment rights. The magistrate judge accordingly entered judgment for Felton against the Board and against Commissioner Crowe in his official capacity. As Commissioner Stone had died before the case went to trial, the court relied

heavily on evidence related to Commissioner Crowe's decision to appoint Sullivan.

In a post-trial motion, defendants Crowe and the Board argued that while the district court's findings could support an individual judgment against Crowe, there was insufficient evidence to impose liability upon the Board because improper motive was shown only with regard to one Commissioner—that is, Crowe. The court disagreed, finding that "the preponderance of the evidence which exists establishes that Crowe and Stone jointly made their selection of Sullivan based upon a custom or practice in Greene County that political affiliation should be considered in the decision of who to appoint as a [VSO]. Their vote was an official act of the Commissioners and acts to bind the County." Entry On Motion For Judgment As A Matter of Law, at 5.

The Board now appeals, arguing that an official capacity judgment cannot be sustained where the unlawful act consists of a vote of the Board to appoint a VSO, absent evidence of unlawful motive on the part of a majority (i.e., in this case, at least two members) of the Board. The Board presents three closely related issues for our review: (1) whether there was sufficient evidence to support the district court's findings and conclusions that the Board unlawfully considered political affiliation in failing to re-appoint Felton; (2) whether the district court's discussion in its entry denying the defendants' post-trial motion constitutes findings of fact, and if so, whether such findings were clearly erroneous; and (3) whether the court erred in basing liability on evidence of custom and practice, where the underlying constitutional deprivation rested on a vote of the final policymaking authority—the Board.

## II.

## DISCUSSION

■ This case went to trial as an action against a governmental entity—the Board—and against Commissioner Crowe in his official capacity only. Because Crowe had qualified immunity under *Pounds v. Griepenstroh*, 970 F.2d 338 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1256, 122 L.Ed.2d 654

(1993), the individual capacity suit against Crowe was properly dismissed on summary judgment. It is well established that an official capacity suit is synonymous with a suit against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3104–06, 87 L.Ed.2d 114 (1985). Under 42 U.S.C. § 1983, liability on the part of a governmental entity arises upon proof that the entity adhered to an unconstitutional policy statement, ordinance, regulation, or decision officially adopted and promulgated by the entity's officers. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Both parties agree that this is the law applicable to this case. Both parties further agree that under Indiana law, the final decision-maker for the purposes of governmental liability under § 1983 was the Board. *See* Ind.Code 36–2–2-2, 36–2–4–2, 36–2–4–4.

The Board argues that while the evidence presented at trial might support a finding that one member of the Board—Commissioner Crowe—acted with unlawful motive, the evidence does not support a finding that the Board (or at least a majority of the Board) acted unlawfully by failing to reappoint Felton based on his political affiliation. It contends that under *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), it was Felton's burden to show that the Board's (rather than just Commissioner Crowe's) decision was improperly motivated by Felton's political affiliation. The plaintiff agrees with this proposition, but contends that he has proven that the Board's decision was improperly motivated by his political affiliation. Specifically, the plaintiff argues that unlawful motive has been established with regard to both Commissioners Crowe and Stone, who together constituted a majority of the Board.

■  The court's finding that political affiliation was a substantial motivation factor in Commissioner Crowe's vote not to appoint Felton is essentially unchallenged on appeal. Even if it was challenged, there exists substantial evidence in support of this finding. The court made no finding as to unlawful motive on the part of Commissioner Bailey,

the only Republican remaining on the Board after the 1988 election, because he testified at trial that his vote merely "agreed with the choice" of Commissioners Crowe and Stone. The defendant argues that in its original Findings of Fact, Conclusions of Law and Decision (the "Decision"), the magistrate judge made no specific findings regarding unlawful motive on the part of Commissioner Stone either. However, as we explain more fully below, the district court addressed this issue in response to the defendants' post-trial motions and made additional findings of fact regarding the unlawful motive of Commissioner Stone. The court stated:

> The Court concludes that Stone and Crowe in fact considered the [VSO] position one for which political affiliation was appropriate and one which customarily was filled by a political ally. They made the decision to put a Democrat in the position of [VSO] prior to January 4, 1989, and advised Sullivan of their decision significantly before the formal vote. Sullivan took physical control of the office before a formal vote was taken by the Commissioners, but after the "new board" [i.e., Crowe and Stone, since their majority controlled all decisions] had met to make preliminary decisions concerning personnel matters. Because the Court has concluded that decision-makers with authority for the County did in fact make the decision to appoint Sullivan and thereby made the decision to ratify and continue in effect the custom of political appointment in the [VSO] job, the County may be held liable.

Entry On Motion For Judgment As A Matter of Law, at 5–6.

Moreover, although the court's original decision may have lacked an articulated specific finding of unlawful motive on the part of Commissioner Stone, it did find that the Board as a whole, by acquiescing in the decision of Commissioner Crowe, acted unlawfully in appointing Sullivan. Certain of its other factual findings also provide support for a finding of unlawful motive on the part of Commissioner Stone. For example, the court found that the December 14, 1988 letter to Felton, which was signed by both Crowe *and Stone*, "was written with the in-

tention to terminate Felton's appointment at the end of the 1988 calendar year." Decision, at 9–10. Also, the court found that "[t]he practice for many years [in Greene County] ... was that employment was based on political affiliation to some degree." *Id.* at 11, 14. The court further found that "[t]he decision to appoint Sullivan and to fail to reappoint Felton was made shortly after the 1988 election, before *Stone* or Crowe consulted with the county attorney [regarding the illegality of considering political affiliation when making county appointments]." *Id.* at 14 (emphasis added). Also, the court recognized that "there is no indication that Felton was performing his job in any improper manner," *id.* at 13, and that Felton had significantly more experience for the VSO position than did Sullivan. Nonetheless, Commissioner Crowe nominated, and Commissioner Stone seconded, Sullivan for the VSO job opening. Finally, the court noted that the January 4, 1989 vote of the Commissioners merely "approv[ed] Crowe's *and Stone's* selection of Sullivan ... [and constituted] an officially adopted decision." *Id.* at 15 (emphasis added). Thus, the district court's finding that Stone also unlawfully considered political affiliation in appointing Sullivan and failing to reappoint Felton is sufficiently supported by the evidence presented at trial and is adequately articulated in the court's factual findings.

The lack of specific findings regarding Stone's motive, as compared to the abundance of findings regarding Crowe's motive, is undoubtedly due to the fact that Stone was unavailable to testify at trial due to his death. The defendants now essentially argue that this should preclude a finding of official capacity liability because unlawful motive can only be proved with respect to Commissioner Crowe. As noted above, we feel that this argument must fail. Certainly, the death of Stone places a much greater burden on Felton to prove unlawful motive on the part of the Board. However, although the evidence is not nearly as abundant against Stone as it is against Crowe, it is nonetheless sufficient

to support the court's finding that (at least) a majority of the Board was improperly motivated in its decision to appoint Sullivan (and not to re-appoint Felton) due to their political affiliations. The act at issue in this case consisted of a vote taken by the entire Board on January 4, 1989. The evidence presented at trial suggests that while Commissioner Bailey merely agreed with the choice for VSO made by Commissioners Crowe and Stone, both Crowe and Stone unlawfully considered political affiliation when they nominated, seconded, and voted to appoint Sullivan.

Citing Federal Rule of Civil Procedure 52(b) and declaring his intention to make an additional finding of fact, the magistrate judge in his August 3, 1992 Entry On Motion For Judgment As A Matter of Law added fact 17(a)[2] to the original findings and conclusions. According to the court, this finding is significant in that "it clearly establishes that Sullivan knew prior to the meeting of the Commissioners on January 4, 1989, that he had the necessary two votes to be appointed to the Veteran's Service Officer position." Entry On Motion For Judgment As A Matter of Law, at 4. Considering also the facts that Commissioners Stone and Crowe both signed the December 14, 1988 letter to Felton and that Stone seconded Crowe's motion to appoint Sullivan before having consulted the county attorney regarding the legality of such an appointment, the court concluded that "Crowe and Stone jointly made their selection of Sullivan based upon a custom or practice in Greene County that political affiliation should be considered in the decision of who to appoint as Veterans' Service Officer." *Id.* at 5. On appeal, the Board argues that, because it is contained in the discussion portion of the opinion (rather than added as specific findings of fact), this conclusion cannot constitute a finding of fact.

The defendant cites no authority for such a proposition and we have found none. Because these findings constitute findings of fact on which it was valid for the district

---

2. The fact states:

17(a). Sullivan took physical control of the Veteran's Service Office on January 2, 1989. (Testimony of Sullivan). He "took the liberty of hiring Mr. John Achors as a Driver for the department" on January 3, 1989. (Plaintiff's Exhibit 7).

court to base its conclusions, we must consider the defendants' second contention in addressing this issue—whether those findings are clearly erroneous.

The Board argues that in finding unlawful motive on the part of Commissioner Stone, the district court merely attributed to Stone the demonstrated unlawful motive of Commissioner Crowe. This is a mischaracterization of the magistrate judge's findings. As noted and explained above, the court did find that both Stone and Crowe unlawfully considered political affiliation in making their decision to appoint Sullivan as VSO. However, although the evidence against Commissioner Stone is slim compared to that against Commissioner Crowe, there is separate evidence supporting the court's finding of motive on the part of Stone.

First, Commissioner Stone signed the December 14, 1988 letter sent to Felton, which essentially called for his termination. Second, he was aware of the Greene County practice of considering political affiliation when making appointments such as the VSO. Third, Commissioner Stone seconded the nomination of Sullivan for the VSO position, after Commissioner Crowe's nomination. It must be noted that neither Crowe nor Stone had consulted with the county attorney regarding the legality of the appointment criteria before the January 4, 1989 meeting. Fourth, as the court found, the decision to appoint Sullivan was a joint one between Crowe and Stone. Fifth, the fact that Sullivan took physical control of the office on January 2, 1989—two days prior to the January 4, 1989 formal vote of the Board—strongly suggests that he had received some indication of Commissioner Stone's intention to vote him in. Finally, Commissioner Stone actually voted for Sullivan at the January 4, 1989 meeting, thus officially endorsing Crowe's (and his own) decision to appoint Sullivan, based at least in part on political affiliation. In sum, we do not find that the district court's finding of unlawful motive on the part of Commissioner Stone is clearly erroneous.

■ The defendants next argue that the trial court erred in employing custom and practice as the basis for imposing liability on the governmental entity, where liability rested on proof of unlawful motive on the part of policymakers. The defendants have failed to present this issue in a straightforward manner. Although it is not entirely clear from either the briefs or oral argument, this issue appears to dispute the district court's finding which stated:

> The vote of the Commission members on January 4, 1989, approving Crowe's and Stone's selection of Sullivan as VSO constitutes an officially adopted decision which was taken pursuant to an officially sanctioned policy, custom or practice of considering political affiliation in the appointment of county jobs.

Decision, at 15 (Issue No. 4; Finding No. 20).

The defendants seem to suggest in their brief that the district court erroneously based its holding on a finding of an unlawful custom or practice in Greene County. To confer liability on a local governmental body, the plaintiff may show either that the ultimate decision-making authority acted to deprive the plaintiff of a constitutional right or that the ultimate decision-making authority acquiesced in the deprivation by allowing a custom or practice of such deprivation to exist. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). However, where the ultimate decision-making authority itself has committed the unlawful act, as the plaintiff has here alleged, the plaintiff need not also prove that there was a continuing custom or practice of that particular deprivation. As we have previously noted, "[w]here a particular course of action is authorized by a municipality's authorized decision-makers, it represents a policy rightly attributed to the governmental entity, and in such a case, there is no need to resort to proof of the policy's multiple applications to attribute its existence to the municipality." *Ross v. United States*, 910 F.2d 1422, 1430 (7th Cir.1990) (*citing Pembaur*, 475 U.S. at 480–81, 106 S.Ct. at 1298–99; *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir.1990)).

The defendants contend that the district court found the Board liable for the past custom or practice of making county appointments based on political affiliation, thus applying the incorrect legal standard to this

case. We do not agree. Such a proposition mischaracterizes the district court's findings and conclusions. The district court did not find the Board liable for a past custom or practice in Greene County. Rather, it found that the Board was liable for the decision it made, as the ultimate decision-making authority, to appoint Sullivan (and not to reappoint Felton) based on political affiliation. The court's observations regarding the custom of making political appointments in Greene County were merely considered as evidence in support of the plaintiff's allegations that the Board acted unlawfully in its January 4, 1989 decision to appoint Sullivan. Evidence of past practice or custom was thus not the basis of liability, as the defendants seem to contend, but rather was simply additional evidence relevant to the issue whether the Board and its members unlawfully considered political affiliation in rendering its January 4, 1989 decision. Accordingly, because the defendants have misinterpreted the district court's decision, this argument must fail—the district court did not incorrectly apply the law in order to find a § 1983 violation in this case.

### III.

### CONCLUSION

For the reasons articulated above, the district court's decision is AFFIRMED.