Kenneth C. NELMS, Plaintiff–Appellant,

v.

Jeffrey A. MODISETT, Attorney General of Indiana in his official capacity, Daniel B. Dovenbarger and Dennis P. Lee, in each one's official and individual capacities as a Chief Counsel for the Attorney General, and Pamela Carter, in her individual capacity, Defendants–Appellees.

No. 97–2536.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1998.

Decided Sept. 1, 1998.

Brenda Franklin Rodeheffer (argued), Monday, Rodeheffer, Jones & Albright, Indianapolis, IN, for Plaintiff–Appellant.

Hudnall A. Pfeiffer (argued), Baker & Daniels, Indianapolis, IN, for Defendants–Appellees.

Before CUMMINGS, COFFEY and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff Kenneth C. Nelms brought suit against defendants,[1] alleging that he was terminated because of his political affiliation in violation of the First Amendment, his age in

---

1. Specifically, in the district court, Nelms, along with three other individuals, brought suit against defendants Daniel B. Dovenbarger, Dennis P. Lee and Pamela Carter, in their individual and official capacities. In May 1997, Jeffrey A. Modisett was substituted for defendant Carter in his official capacity as Attorney General of Indiana, with Carter remaining as a defendant in her individual capacity. However, in response to defendants' motion for summary judgment, Nelms abandoned his § 1983 First Amendment claims against defendants in their official capacities, recognizing that such claims were barred by the Eleventh Amendment.

violation of the Age Discrimination in Employment Act ("ADEA"), and his sex and race in violation of Title VII of the Civil Rights Act of 1964. Before the district court ruled on defendants' motion for summary judgment, Nelms stipulated to dismissal of his sex and race discrimination claims under Title VII. The district court then granted summary judgment in favor of defendants on Nelms' age and political affiliation claims. Nelms appeals the district court's decision only as it relates to his political affiliation claim under the First Amendment.

## I. Facts

The facts, set forth in more detail in the district court's opinion, are as follows: In July 1992, plaintiff Kenneth Nelms was hired as a field investigator in the Consumer Protection Division ("CPD") of the Office of the Attorney General of Indiana. At that time, Linley Pearson, a Republican, held the office of Attorney General. As a field investigator, Nelms was responsible for investigating and resolving consumer complaints. Complaint analysts would receive initial complaints from consumers and would make initial contacts with the businesses that were the targets of the complaint. At the request of complaint analysts or attorneys, field investigators then would go out into the field to find the businesses that had not responded to the complaint analysts, to gather information, and/or to collect money. At the time Nelms was hired, there were two other field investigators working in the CPD: Oscar Donahue (age 73 and hired in 1982) and Jeral Baker (age 62 and hired in August 1991). Nelms was involved primarily with automobile complaints.

In November 1992, Pamela Carter, a Democrat, was elected Attorney General. Upon taking office in January 1993, she appointed Dennis Lee as her Chief of Staff, Daniel Dovenbarger as Chief Counsel for General Litigation and Lisa Hayes as Chief Counsel for the CPD.

In May 1993, Baker was terminated. While defendants allege that Baker resigned voluntarily, Nelms claims, as does Baker, that Lee asked Baker to resign because he

was not compatible with the goals of the new administration. When he refused, he was fired. Defendants did not hire anyone to replace Baker.

In an effort to restructure the CPD, Hayes and Lee wanted to reduce the role of field investigators and rely more on complaint analysts who had a wider range of skills. Under the Pearson administration, three field investigators were employed in the CPD. In May 1993, one position was eliminated when Baker was terminated and not replaced. By June 1993, Lee and Hayes had decided to eliminate another field investigator position.

In determining whether to retain Donahue or Nelms as the sole investigator, Hayes considered that Donahue had more experience in the position, having been with the CPD for more than ten years, in contrast to Nelms who had been employed for a little over ten months. In addition, Hayes viewed Nelms as "unprofessional," finding his behavior of flashing money he had received around the office inappropriate. She considered him to be a "suck-up" and believed his skills were limited. Donahue, on the other hand, was considered to be a model employee. Therefore, in June 1993, Hayes and Lee decided to retain Donahue as the only remaining field investigator in the CPD and discharge Nelms.

On June 4, 1993, Lee met with Nelms and told him that "You know when Pam Carter took office, she had certain goals and plans for this administration * * *. Well, I am here to inform you that higher authority [namely, Carter] has instructed me that you do not fit into those goals and plans of the Attorney General's Office." When Nelms refused to resign, Lee advised him that he was terminated. In response to Nelms' inquiry as to what he had done wrong, Lee replied that he hadn't done anything wrong and then stated "You understand political realities."[2] Nelms was 45 years old when he was terminated and had been working at the CPD for a little over ten months. The CPD did not hire another investigator to replace Nelms, and his caseload was taken over by complaint analysts and attorneys and by Donahue, the only investigator remaining in the CPD.

2. Lee denies making this comment. However, for purposes of a motion for summary judgment, we must accept as true plaintiff's version of the facts.

Nelms claims that he was fired because of his political association. Nelms did not tell nor was he asked by anyone in the Carter administration about his political affiliation. In addition to Lee's comments that Nelms did not fit into the goals of the administration and that "[y]ou understand political realities," Nelms points to statements made by Donahue and Nelms' supervisor, Mary Brown, as evidence that he was fired because of his political association. Specifically, Nelms alleges that in February 1993, fellow investigator Donahue said to him "You are going out of here * * * [y]ou're a Republican politician, and my people are in there," and in May 1993, Donahue reiterated that "You are going out of here just like Baker went out of here." Donahue never told Nelms that anyone else in the CPD had ever said anything to him regarding Nelms' political affiliation. Nelms contends that when he informed Brown about Donahue's comments, she stated "Oh, yes, I just heard myself that you were a Republican, ran for office and everything." Nelms alleges that Brown told him that she learned of his political affiliation in a staff meeting.[3] In response to Nelms' inquiry as to whether it was a problem, Brown allegedly claimed that it was not a problem for her but speculated that Lee and Carter might have a problem with it.

Subsequent to Nelms' termination, the administration attempted to transition to a system where a single Investigation Section would do the investigative work, rather than investigators employed in each division. To test this plan, they brought Bill Ingram, an investigator from the Torts Section, over to the CPD in February 1994. While the plan to cross-train investigators for the entire Attorney General's office was eventually abandoned, Ingram stayed in the CPD because Donahue had resigned in December 1993, and someone was needed to fill his spot.

## II. Analysis

■ "[D]ismissals of public employees for reasons of political patronage are violations of the First Amendment," *Patkus v. Sangamon–Cass Consortium*, 769 F.2d 1251 (7th Cir.1985), "unless party affiliation is an appropriate requirement for the position involved." *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 64, 110 S.Ct. 2729, 111 L.Ed.2d 52; *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574; *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547.

The district court found it unnecessary to the disposition of the case to address the constitutional issue of whether Nelms' position at the CPD was one for which political affiliation is a permissible requirement because, even assuming, *arguendo*, that terminating Nelms because of his political affiliation would violate the First Amendment, the district court reasoned that Nelms had not met his burden of proof of establishing that his termination was in fact politically motivated. We agree.

■ In order to establish a prima facie case of politically motivated discharge, Nelms must "prove by a preponderance of the evidence that his conduct was constitutionally protected, and that the protected conduct was a substantial factor in the decision to terminate him." *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir.1992). As we have noted, "[t]hat burden is not insignificant. A disgruntled employee fired for legitimate reasons would not be able to satisfy his burden merely by showing that he carried the political card of the opposition party or that he favored the defendant's opponent in the election." *Nekolny v. Painter*, 653 F.2d 1164, 1168 (7th Cir.1981), certiorari denied, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139. If Nelms is able to demonstrate that his political affiliation was a motivating factor in his termination, the burden then shifts to defendants to prove by a preponderance of the evidence that they had a legitimate, non-political reason for terminating him in order to avoid liability.[4] *Garrett*, 961 F.2d at 632.

---

3. While Brown denies that this conversation between her and Nelms ever occurred and contends that she was unaware of Nelms' political affiliation, such an issue of fact is not appropriately decided on a motion for summary judgment.

4. Nelms urges this Court to disregard the standard set forth in *Garrett* and permit him to establish a prima facie case using the standard employed in Title VII cases. We reject Nelms' suggestion to overrule our decision in *Garrett*. As we noted in that case, "[f]acts suggesting that

## A. Nelms has not Established a Prima Facie Case of Politically Motivated Discharge

Because Nelms' conduct, his Republican party membership, is constitutionally protected activity, the question then is whether Nelms has demonstrated that defendants were "motivated, at least in part, by that conduct to fire him." *Id.* In order to prove that defendants were motivated by his political affiliation, Nelms first must prove that defendants in fact knew of his Republican party membership. *Id.* We agree with the district court's finding that while Nelms presented no direct evidence that anyone in the Carter administration was aware of his political affiliation, the fact that he ran for an office as a Republican in the November 1992 election raises a material question of fact as to defendants' knowledge. However, as the district court continued, "even if Defendants were aware of * * * Nelms' * * * political affiliation, [his] claim[ ] still must fail, because * * * Nelms * * * has [not] presented any evidence that would support a finding that Defendants' decision to terminate * * * [him] was politically motivated." May 22, 1997 Opinion, at 27.

Nelms contends that the following comments serve as sufficient evidence that defendants terminated him because of his political affiliation: (1) Donahue's alleged statement that "[y]ou are going out of here * * * [y]ou're a Republican politician, and my people are in there;" (2) Brown's alleged comment that she was aware that Nelms was a Republican and ran for office and that his political affiliation might be a problem for Carter and Lee; and (3) Lee's statement, "[y]ou understand political realities," made when he discharged Nelms. We agree with the district court's conclusion that "[a]ssuming that Donahue, Brown and Lee did make the comments attributed to them, those comments were insufficient to raise a material issue of fact whether Carter, Lee or Dovenbarger were motivated by Nelms' political affiliation in discharging him." *Id.* at 28.

As for the alleged comments made by Donahue and Brown, neither Donahue nor Brown was involved in the decision to terminate Nelms. Rather, it was Hayes who made the recommendation to terminate Nelms and retain Donahue as the sole remaining investigator. In addition, neither Donahue nor Brown had any way of knowing whether Nelms was going to be discharged because of his political affiliation. In fact, Nelms conceded that Brown merely speculated that his political affiliation "might" be a problem for Carter and Lee. And Donahue never indicated to Nelms that anyone else in the CPD had ever discussed Nelms' political affiliation with him. As the district court emphasized, Nelms "cannot rely on the speculation or opinions of non-decision makers as proof that Defendants fired him because of his political affiliation." *Id.* at 29. " 'Stray remarks in the work place * * * cannot justify requiring the employer to prove that its decisions were based on legitimate criteria. Nor can statements made by non-decision makers or statements made by decision makers unrelated to the decisional process itself suffice to satisfy the plaintiff's burden in this regard.' " *McCarthy v. Kemper Life Ins. Companies*, 924 F.2d 683, 686 (7th Cir.1991) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (O'Connor, J., concurring)). *See Sybron Transition Corp. v. Security Ins. Co. of Hartford*, 107 F.3d 1250, 1254 (7th Cir.1997) ("[a] party must present more than mere speculation or conjecture to defeat a summary judgment motion"); *Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1266 (7th Cir.1993), certiorari denied, 511 U.S. 1005, 114 S.Ct. 1372, 128 L.Ed.2d 48 (discriminatory remarks, "when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria"); *Garrett*, 961 F.2d at 634 ("speculation cannot be the basis of a jury verdict"). *See also Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1403–1404 (7th Cir.1996); *Courtney v. Biosound, Inc.*, 42 F.3d 414, 419 (7th Cir.1994).[5]

a qualified person of one type was fired, and a person of another type was hired make out a prima facie case of race or sex discrimination, but they do not suffice to show discrimination based on political affiliation." *Garrett*, 961 F.2d at 633.

5. The district court also noted that Nelms' testimony regarding what Brown and Donahue allegedly said is inadmissible hearsay. *Hong*, 993 F.2d at 1264–1265. However, because Donahue and Brown were not decision makers and thus the alleged comments made by them were not

Finally, Lee's statement that Nelms did not meet the goals and plans of the Carter administration does not demonstrate that Nelms was terminated because of his political affiliation. Nelms was terminated because the Carter administration was reorganizing the CPD and found it necessary to reduce the role of field investigators. Hayes and Lee decided to retain Donahue over Nelms because of Donahue's seniority and more exemplary work habits. Thus Lee's statement that Nelms did not meet the goals of the Carter administration was an accurate assessment of the situation. In addition, Nelms does not present evidence demonstrating that Lee's innocuous comment, "[y]ou understand political realities," indicated that Nelms was being terminated because of his political affiliation. As previously noted, Nelms cannot rely on speculation and unsupported assertions in order to avoid summary judgment.

Nelms directs us to two cases where this Court determined that political affiliation was a motivating factor in the decision to terminate employment, arguing that the evidence in his case is even more substantial. We disagree. In *Felton v. Bd. of Comm'rs of Greene County*, 5 F.3d 198 (7th Cir.1993), we found that the Board of Commissioners unlawfully considered political affiliation and thus was liable in its official capacity where the evidence revealed that the decision makers engaged in a long-standing practice of relying on political affiliation in staffing the position at issue and that the Democratic decision makers decided to fill the position with a Democrat and advised the Democrat of this decision significantly before a formal vote of the board occurred. Nelms' evidence does not rise to this level. In addition to the fact that he has not shown a long-standing practice of staffing according to political affiliation, unlike the plaintiff in *Felton*, Nelms has not shown that he was terminated in order to be replaced with a political ally of the Carter administration. Nelms was terminated in an effort to downsize the investigative department of the CPD, and upon his discharge, his position was eliminated and his work absorbed by existing employees.

probative of the motivation behind Nelms' termi-

In *Nekolny v. Painter*, this Court held that plaintiffs met their burden of demonstrating that their termination was politically motivated where the defendant's assistant specifically had informed them that they were losing their jobs because they had worked against the defendant in the election. 653 F.2d at 1168–1169. Thus the plaintiffs in *Nekolny* demonstrated that they were not fired for legitimate reasons by presenting direct evidence-the statement of the defendant's assistant—which revealed the motivation for plaintiffs' termination. They did not attempt to satisfy their burden merely by showing that they belonged to a different political party than the defendant or that they favored the defendant's opponent in the election. *Id.* at 1168. Nelms' situation is distinguishable because even though he belonged to a different political party than Carter and ran for a minor position in the prior election, he offers no evidence indicating that the Carter administration was motivated by his political affiliation in terminating him. Unlike the plaintiffs in *Nekolny* who supported their claim with direct testimony, Nelms relies on speculation, and thus, contrary to his assertion, does not present as strong a case as that in *Nekolny*.

Because the plaintiffs in *Felton* and *Nekolny* presented more substantial evidence that they had been terminated because of their political affiliation, Nelms cannot rely on those cases in order to avoid summary judgment. Thus we are in accord with the district court's conclusion that Nelms has not established a prima facie case of politically motivated discharge.

**B. Even if Nelms had Established a Prima Facie Case, Defendants Proffered a Legitimate, Non–Political Reason for his Termination**

Even if Nelms had established a prima facie case, summary judgment still would be warranted because defendants have produced a legitimate, nonpolitical reason for their decision to terminate Nelms—the restructuring of the Office of Attorney General. Specifically, Hayes and Lee wanted to reduce the role of field investigators in the

nation, we need not address this issue.

CPD and rely more on complaint analysts. Thus, in May 1993, one field investigator position was eliminated when Baker was terminated and not replaced. In June 1993, Hayes decided to eliminate another field investigator position. Having to choose between Nelms and Donahue, defendants chose to terminate Nelms and retain Donahue as the sole remaining field investigator. They based this decision partly on the fact that Donahue had been with the CPD for more than ten years whereas Nelms had held his position for approximately ten months, and on their assessment that, in contrast to Donahue's exemplary performance, Nelms' skills were limited and his work habits, specifically his practice of flashing money, bragging, and "sucking up," were unprofessional. Nelms was not replaced, his duties being absorbed by existing employees. As the district court found, "the undisputed facts show that, since Nelms' termination, the CPD has consistently employed only one field investigator to handle all consumer complaints." May 22, 1997 Opinion, at 31.

Nelms has not presented evidence casting doubt on defendants' reason for his termination. Specifically, he has not shown that the decision to reorganize the CPD was politically motivated. Nor has he established that defendants' stated reasons for retaining Donahue over Nelms were not the real reasons for his termination. Thus, even if Nelms had been able to establish a prima facie case, defendants still would be entitled to summary judgment because he has not demonstrated that defendants' proffered reasons for his termination were not legitimate and that his termination was motivated by his political affiliation.

Nelms argues that, regardless of defendants' reasons for his termination, summary judgment is inappropriate because he was performing his work satisfactorily. In support of this, he offers the testimony of former supervisors from the prior administration. However, we first note that such testimony is irrelevant because the fact that Nelms may have fit in with the goals and plans of the prior administration does not mean that he

meets the goals of the current administration. More to the point, "[Nelms'] contention that he was performing his job satisfactorily, even if true, does not prove that the motive for his firing was political." *Garrett*, 961 F.2d at 633. "[Nelms] could be fired for a good reason or for no reason at all, as long as he was not fired because of his constitutionally protected activities." *Id.*; *see also Grossart v. Dinaso*, 758 F.2d 1221, 1228 (7th Cir.1985) ("[defendant] did not need to show good cause for terminating [plaintiff]; he had only to refrain from terminating her for reasons that penalized her exercise of first and fourth amendment rights"). Furthermore, defendants do not assert that Nelms was terminated due to unsatisfactory work performance. Rather, they terminated Nelms because the administration decided to reduce their dependence on field investigators and rely more heavily on complaint analysts. After analyzing the abilities of Donahue and Nelms, they determined that Donahue was the more valuable employee to retain. As we stated in *Garrett*, "[a] reorganization is a legitimate reason to terminate someone who is performing satisfactorily." 961 F.2d at 634 (citing *Misek v. City of Chicago*, 783 F.2d 98 (7th Cir.1986)). *See also Lasco v. Northern*, 733 F.2d 477, 480–481 (7th Cir.1984) (in finding that plaintiff failed to demonstrate that layoff resulted from his exercise of constitutionally protected activities, we emphasized district court's findings that fiscal restraints were valid motive for layoffs and that plaintiff's duties were distributed to other workers, "constituting a reorganization and eliminating the need for his position").[6] Thus defendants have demonstrated that they did not terminate Nelms because of his political association.

## III. Conclusion

Nelms has failed to present sufficient evidence to establish a prima facie case that his termination was politically motivated. Even if he had been able to do so, summary judgment still would be appropriate because defendants have proffered legitimate, non-polit-

6. Additionally, Nelms argues that defendants should have made him a complaint analyst rather than terminate him and the fact that they did not indicates that their decision to fire him was politically motivated. However, he offers no evidence indicating that such a position was even available at the time of his termination.

ical reasons for his termination, and Nelms has not presented any evidence indicating that these reasons were a pretext for discrimination based on his political affiliation. Because Nelms has not established sufficient proof that his discharge was politically motivated, it is unnecessary for this Court to address the issues of whether Nelms' position is one for which political affiliation is an appropriate consideration or whether defendants would be entitled to qualified immunity had their decision to terminate Nelms been politically motivated. Accordingly we AFFIRM the district court's decision granting summary judgment in favor of defendants.