# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-3631

THOMAS HALL,

*Plaintiff-Appellant,*

v.

STEVE BABB, BRIAN PIERSMA,
and BARBARA WESTELL,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 01-4172-JLF—**James L. Foreman**, *Judge.*

_____

ARGUED AUGUST 3, 2004—DECIDED NOVEMBER 24, 2004

_____

Before POSNER, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Plaintiff Thomas Hall has brought this suit on the basic premise (with which few would disagree in the abstract) that political patronage is not yet dead in Illinois. Hall was passed over for a new job within the Illinois Department of Transportation (IDOT) in 1999. He believed that his lack of success could be traced to the fact that the other applicant, while a fellow member of the Republican Party, was somehow a more zealous Republican than Hall. Hall sued the three state officials who had interviewed him and made the decision to hire the other ap-

plicant under 42 U.S.C. § 1983 for violation of his First Amendment rights. The district court granted summary judgment for the defendants. While we find the allegations in Hall's complaint to be troublesome, we conclude that Hall did not present enough evidence to bolster those allegations at the summary judgment stage. For that narrow reason, we affirm the judgment of the district court.

I

We summarize the pertinent facts based on the statements that the parties submitted in conjunction with the defendants' motion for summary judgment. Where disputes exist, we present the story in the light most favorable to Hall. In June 1999, the position of Business Services Manager became available in IDOT's Carbondale office. Hall and David Barger, both IDOT employees at the time, were the only two applicants for the position. Barger was a "highway maintainer," which entailed flagging traffic, patching potholes, mowing grass, and plowing snow. Hall had worked previously as a highway maintainer but, at the time of the job opening, he held another position in the Business Services office.

Hall and Barger both had been involved in the Republican Party in Illinois. Hall ran for a county board seat in 1992 as a Republican, served as treasurer of the Jackson County Republican Committee until his resignation in 1995, and served as a precinct committeeperson until 1998, when he chose not to run again. Hall also volunteered in 1997 for a phone bank on behalf of George Ryan's gubernatorial campaign (at the request of defendant Babb) and donated at Republican fundraisers. Barger also had been active in the Republican Party, putting up signs and attending fundraisers for Ryan's gubernatorial campaign in 1998. He might also have volunteered for Jim Edgar's earlier campaign for governor. Barger was also the son-in-law of Sammye Fark,

who Hall contends was very influential in Republican politics in Illinois at the time. Fark worked in the Secretary of State's office during George Ryan's term and was the manager of the state fair during Ryan's gubernatorial term.

Defendants Steve Babb, Brian Piersma, and Barbara Westell, all managers of one sort or another within IDOT, were selected to interview Hall and Barger for the job opening. Someone in IDOT's central office in Springfield, where Piersma worked, selected Piersma for the panel. A person in the same office instructed Babb to select two additional interviewers from IDOT's Carbondale office. Babb selected himself and Westell, who reported to Babb. Babb received two recommendations from Republican politicians on behalf of Hall, but he did not convey these to the other two panel members. As far as the record shows, no one on the panel received any recommendations on behalf of Barger.

Hall highlights several incidents that occurred before the interview that suggest to him that Barger had been "preselected" to get the job. First, Hall contends that Babb allowed Barger to "train" in the Business Services office for up to two weeks before the interview. The defendants counter that Barger was allowed merely to visit the office for one day. They point out that Babb testified at his deposition that this was "standard practice" for IDOT applicants. Second, Hall highlights evidence that Barger told fellow highway maintainers before the interview that "he thought he had the job." Another IDOT employee, according to Hall, overheard panel member Westell tell others before the interview that Hall "wouldn't be getting the position." The defendants admit that Westell made this comment, but they claim that it referred to Hall's past job performance. Finally, Hall claims that while Barger was "training" for the position in the Business Services office, he told Hall that he had an advantage in getting the job because his mother-in-law was Sammye Fark.

During the interview the three defendants asked both Hall and Barger an identical set of questions from a pre-existing interview questionnaire, which focused on the applicants' experience and qualifications. The defendants did not ask either Hall or Barger any questions about political support, affiliation, or activities. The panel members individually scored the applicants' answers without consulting each other, and all three of them assigned a higher total score to Barger. Based on the score results, and after receiving approval from the supervisor in charge of the Carbondale office, Barger was offered and accepted the job.

The district court granted summary judgment for the defendants for two independent reasons. First, the district court concluded that Hall had not presented any admissible evidence that the defendants knew of either applicant's political affiliations or activities. Second, the district court concluded that even if the defendants did have this knowledge, Hall presented no admissible evidence that the defendants considered the applicants' political backgrounds in reaching the hiring decision.

## II

On appeal, Hall argues that the district court erred in failing to recognize that he presented evidence sufficient to create an issue of material fact on the question whether political motivation was a substantial factor in the decision to hire Barger over him. Hall contends that, although he and Barger were both affiliated with the Republican Party, his evidence (if believed by a trier of fact) shows that the defendants selected Barger because he was more active and connected in the party, particularly after Hall chose to not run for party office again in 1998.

It is well established that hiring, firing, or transferring government employees based on political motivation violates the First Amendment, with certain exceptions for policy-

making positions and for employees having a confidential relationship with a superior. See *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 65, 71 n.5 (1990); *Elrod v. Burns*, 427 U.S. 347, 367, 375 (1976). To make out a *prima facie* case for this type of employment discrimination, a plaintiff must show two things: first, that the plaintiff's conduct was constitutionally protected, and second, that the protected conduct was a substantial or motivating factor in the employment decision. *Simmons v. Chi. Bd. of Educ.*, 289 F.3d 488, 495 (7th Cir. 2002); *Nelms v. Modisett*, 153 F.3d 815, 818 (7th Cir. 1998); see also *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). It is not enough to show only that the plaintiff was of a different political persuasion than the decisionmakers or the successful applicant. See *Nelms*, 153 F.3d at 818. If a plaintiff can make the *prima facie* showing, the burden shifts to the defendant to demonstrate a legitimate, nonpolitical reason for the employment decision. *Simmons*, 289 F.3d at 495; *Nelms*, 153 F.3d at 818.

In this case, the parties agree on several propositions: that the job at issue did not fall under the policymaking exception to *Rutan*, that the defendants are proper parties under § 1983, that none of the defendants is entitled to qualified immunity, and that Hall's chosen level of political activity was protected conduct. Moreover, as we note below, we conclude as a matter of law that the protection afforded by the *Rutan* principle applies to distinctions based on relative degrees of support for a single party, just as it reaches favoritism based on simple party membership. The only issue on appeal is thus whether the two applicants' relative level of political activity in the Republican Party was a substantial or motivating factor in the defendants' decision to hire Barger rather than Hall.

In analyzing this issue, the threshold question is whether the defendants even knew about the political activities of Hall and Barger. See *Nelms*, 153 F.3d at 819; *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir. 1992). Hall argues that

it was not essential for him to make this showing because, as Barger allegedly had been "preselected" for the job based on his level of involvement in the Republican Party, the defendants' knowledge of Hall's own political activities is irrelevant. This argument, however, ignores the fact that, for Hall's theory about Barger's preselection to be true, the defendants still must have wanted to favor Barger because of his political involvement. Hall has assumed that no one could have been a better Republican than Barger, but there is no reason to believe that this is true. If Hall had been better, then (according to his theory of the case), he is the one who would have been rewarded with the job.

In the past, we have sometimes assumed that a person's holding of an arguably prominent party office could support a finding of common knowledge among decisionmakers, and sometimes we have not. Compare *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992) (no assumption), with *Nelms*, 153 F.3d at 819 (holding of prominent positions creates issue of material fact on question of defendants' knowledge), and *Garrett*, 961 F.2d at 632 (same). This is a factual question, however, and on summary judgment review, we are willing to assume (as Hall urges) that the facts support the inference that the defendants knew about *his* political activities. But the record is still missing any concrete evidence that they knew (or thought) that Barger's involvement in the party was more prominent. At the most, the defendants may have conceded through omission that defendant Babb knew something about both applicants' political backgrounds. But Westell and Piersma presented affidavits denying that either of them knew anything about Hall's or Barger's political involvement. Even if these affidavits create an issue of fact with respect to their knowledge of Hall's activities, there is nothing in the record to contradict the denials relating to Barger. Hall has given us only speculation in response (for example, that Babb appointed Westell and so Westell must have been told what he knew) to contradict the defendants' attestations. See *Simmons*,

289 F.3d at 492; *Cusson-Cobb*, 953 F.2d at 1081. Unless a majority of the interviewing board knew something about the relative strength of both applicants' political involvement (keeping in mind that it is undisputed that the panel members did not confer with each other before scoring the applicants), political motivation could not have been a substantial factor in the group hiring decision. See *Felton v. Bd. of Comm'rs*, 5 F.3d 198, 202 (7th Cir. 1993) (focusing on knowledge of majority of decisionmaking body). Hall's failure to offer evidence that would have shown that at least two of the three hiring committee members knew about the political background of the two applicants, or that the hiring decision was manipulated by one member who possessed such knowledge, dooms his case.

This conclusion is not undermined by the other evidence in the record to which Hall draws our attention. For instance, Hall emphasizes Barger's apparently higher level of involvement and connection in the Republican Party. Although Hall's waning commitment to the party and Barger's connections to the allegedly influential Sammye Fark could explain why a hypothetical set of politically-motivated decisionmakers might select Barger over Hall, these facts do not reveal anything about whether the defendants in this case actually considered these facts in making their hiring decision. See *Garrett*, 961 F.2d at 633. Hall also cites what he deems to have been his superior qualifications for the open job (presumably because, unlike Barger, Hall already held a position in the Business Services office). Although superior qualifications of the unsuccessful applicant can be evidence of discrimination, *see Felton*, 5 F.3d at 202, they are not enough in themselves to support an inference that the defendants made their hiring decision based on political motivation rather than any other factor, permissible or forbidden, s*ee Nelms*, 153 F.3d at 818 n.4; *Garrett*, 961 F.2d at 633.

Hall also tries to buttress his point that Barger was "preselected" for the job based on political consideration. He

relies on Barger's being given the opportunity to learn about the position before the interview. But defendant Babb testified at his deposition that this was standard practice within IDOT, and Hall did not rebut this assertion except to note that Babb could not recall the names of applicants who had used this procedure in the past. Hall also cites Barger's comments to fellow workers before the interview that he thought he had the job and his comment to Hall that he had a leg up because of his relation to Sammye Fark. Even if these comments are not hearsay, perhaps because they reveal Barger's state of mind, they also fall short of being evidence of political motivation in the employment decision, because they were not made by anyone who had control over that decision. See *Nelms*, 153 F.3d at 819. Defendant Westell's statement that Hall would not be getting the job is similarly unilluminating. Particularly in light of Westell's explanation in her affidavit that she was referring to Hall's past job performance, there is nothing in the comment that smacks of political motivation.

Hall also complains about alleged procedural irregularities in the selection process, including what he paints as subjective scoring of the applicants, the defendants' not checking into the applicants' employment histories, and Barger's not filling out an application until after the interview. Although these may suggest deficiencies in the selection process, they do not suggest that the defendants made the hiring decision on the basis of politics.

Finally, Hall wants to rely on generic evidence that suggests that the Republican Party in Illinois, and defendant Babb in particular, had a history of filling government jobs on the basis of political patronage. Hall identifies instances in which he contends that Babb was involved in filling positions with political cronies. Although a showing of a past pattern of political patronage may sometimes support a finding of political motivation, see *Felton*, 5 F.3d at 202-04, Babb's alleged past practices do not implicate the two other

defendants, who constituted a majority of the decisionmaking body in this case. Hall also cites the testimony of Janine Oxencis (who ran the Secretary of State's patronage office during George Ryan's term and served as a volunteer coordinator during his gubernatorial campaign) during the highly-publicized trial of Scott Fawell about political corruption in the Secretary of State's office and her repeated assertion of her Fifth Amendment rights during her deposition in Hall's case. Although the parties hotly contest whether negative inferences may be drawn from Oxencis's refusal to talk, her potential testimony is irrelevant to this case because none of her testimony during the Fawell trial dealt with practices within IDOT. Furthermore, although Oxencis became head of personnel at IDOT six months before the filling of the job at issue in this case, Hall presented no independent evidence that she had any personal involvement in the filling of this particular job. Finally, Hall points to emails authored by Babb expressing his distaste for disloyal members of the Republican Party. But these emails, written several years after the hiring decision at issue in this case, do not provide evidence of political motivation in this particular hiring decision because they were made in a context unrelated to that decision. See *Nelms*, 153 F.3d at 819 (explaining that statements unrelated to decisional process at issue do not help satisfy plaintiff's burden); *McClure v. Cywinski*, 686 F.2d 541, 545-46 (7th Cir. 1982).

Although Hall's evidence comes up short in all the ways we have discussed, there is one point made by the defendants that requires comment. They assert that they should prevail as a matter of law because Hall and Barger were affiliated with the same political party. As we indicated earlier, this goes too far. It fails to recognize that state workers in the *Rutan*-protected group are entitled to be treated apolitically. We see nothing to distinguish patronage based on a relatively higher level of involvement within the same po-

litical party from patronage based more simply on membership alone in a particular party. See *Tomczak v. City of Chi.*, 765 F.2d 633, 640 (7th Cir. 1985); *Curinga v. City of Clairton*, 357 F.3d 305, 311 (3d Cir. 2004). Either one coerces public employees to engage in political activity regardless of their wishes.

### III

Although the circumstantial evidence on which Hall wants to rely may raise some eyebrows about the hiring practices used in his case, it is insufficient to create an issue of material fact as to whether political motivation was a substantial or motivating factor in the defendants' decision to hire Barger rather than Hall. Nothing he presented was enough to overcome the uncontradicted evidence presented by the defendants that a majority of the decision-making body (that is, Piersma and Westell) did not even know about the political backgrounds of Barger and Hall. We therefore AFFIRM the judgment of the district court.

A true Copy:

      Teste:

                          _____
                          *Clerk of the United States Court of*
                               *Appeals for the Seventh Circuit*