In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1381

MARIA ZERANTE,

*Plaintiff-Appellant,*

*v.*

ANTHONY DELUCA AND DANIEL PROFT,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 2421—**Joan B. Gottschall**, *Judge.*

ARGUED DECEMBER 8, 2008—DECIDED FEBRUARY 9, 2009

Before EASTERBROOK, *Chief Judge*, and BAUER and
SYKES, *Circuit Judges*.

BAUER, *Circuit Judge*.   Maria Zerante brought a civil
rights action under 42 U.S.C. § 1983 against Chicago
Heights Mayor Anthony DeLuca and his Chief of Staff,
Daniel Proft, alleging that she was fired in retaliation for
her political activities. The district court granted sum-
mary judgment for the defendants, and Zerante appealed.
For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Maria Zerante's employment with the City of Chicago Heights began in 1995 during then-Mayor Angelo Ciambrone's first term. In October of 1999, she was promoted to the position of Purchasing Agent in the City's Purchasing Department, where she served until the end of Ciambrone's second and final term in 2003. When Ciambrone opted not to seek re-election, a host of candidates entered the field to vie for his post. Among the challengers were Paulnita Rees (Ciambrone's Manager of Operations), David Zerante (no relation to plaintiff Maria Zerante), and the eventual winner, DeLuca.

As is common at the municipal level, candidates seeking public office in Chicago Heights run under non-partisan organizational names such as RENAISSANCE, FUEL, BELIEF, and CHANGE, with the top two vote-getters squaring off in the general election. From the primary run-off, David Zerante and DeLuca emerged victorious. Each finalist sought the support of Rees, who had lost in the primary; however, Rees informed David Zerante and DeLuca that she intended to remain neutral.

At this time, Chicago Heights was facing major budget shortfalls and a bleak financial forecast. Consequently, no single campaign issue loomed larger than that of how to solve the city's fiscal woes. While David Zerante's campaign platform focused on refinancing the city's outstanding bonds, DeLuca vowed to cut waste and run the local government more like a private business. DeLuca won the election. The mayor-elect hired Dan Proft as his Chief of Staff, who was charged with examining the

city's books and identifying strategies to get its budget back in the black. Through Proft, DeLuca concluded that the forecast "looked grim." DeLuca and Proft shared the opinion that a central cause of the city's problems was its bloated workforce, which included many duplicative jobs. Accordingly, the DeLuca administration set out to close the budget gap in part by eliminating employee positions. Believing, probably correctly, that unionized employees would likely prove more difficult to fire, DeLuca targeted non-union employees to accomplish his goal. Between May 2003 and September 2004, the DeLuca administration eliminated 17 non-union employees and opted not to replace an additional 17 employees who either retired or left voluntarily.

Proft's information gathering process also revealed that the Purchasing Department was underperforming. According to DeLuca, the department suffered from a lack of centralization, which bred inefficiency and waste. Concluding that it could "do better," the DeLuca administration decided to fire and replace Zerante. Proft testified that Zerante was fired because, "we wanted to send a signal to the people that had just elected us into office that we were serious about those things that we campaigned on. That we were going to bring new blood to city government." DeLuca hired Matt Fares to fill Zerante's vacancy. Fares, whose credentials included private sector business experience, had served as treasurer on the DeLuca campaign.

On April 22, 2005, Zerante brought a § 1983 suit against DeLuca and Proft, claiming that she had been fired

because of her political activities and associations. Zerante claimed that her firing was the result of her support for the Ciambrone administration prior to the 2003 elections and her later support for mayoral candidate Rees during the 2003 primary campaign. The district court granted the defendants' motion for summary judgment, finding that Zerante could not establish a prima facie case of political retaliation, and further, even if she could, DeLuca and Proft had offered a legitimate, non-political explanation for the termination of her employment. This timely appeal followed.

## II. DISCUSSION

On appeal, Zerante contends that the district court erred in granting summary judgement because there were genuine issues of material fact concerning whether her political affiliations caused her employment termination and whether the defendants' explanation for her firing was genuine or merely pre-textual.

We review a district court's grant of summary judgment *de novo*. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008) (citations omitted). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Darst*, 512 F.3d at 907.

The First Amendment protects a person from being removed from public employment for purely political

reasons, with certain exceptions for policymaking positions and employees having a confidential relationship with a superior. *Pleva v. Norquist*, 195 F.3d 905, 911 (7th Cir. 1999). In order to establish a prima facie case for this type of employment discrimination, a plaintiff must demonstrate two things: first, that her conduct was constitutionally protected, and second, that the protected conduct was a substantial or motivating factor in the employment decision. *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004). A plaintiff's claim will fail if she merely shows that she was of a different political persuasion than the decision makers or the successful applicant. *Id.* If a plaintiff can make out a prima facie showing, the burden then shifts to the defendant to demonstrate that there was a legitimate, non-political reason for the employment decision. *Id.*

Here, the parties agree that Zerante's position did not fall under the policymaking exception and, moreover, that her support for the Ciambrone administration, involvement in Rees's primary campaign, and decision to remain neutral in the general election were all protected activities. Thus, Zerante has established the first prong of a prima facie case.

However, to meet the requirements of the second prong and survive summary judgment, Zerante needed to present evidence sufficient to create a genuine issue of material fact on the question of whether political motivation was a substantial factor in the decision to terminate her employment. *See Hall,* 389 F.3d at 762. In analyzing this issue, the threshold question is whether DeLuca

and Proft even knew about Zerante's political activities. *See id.* The district court determined that Zerante presented insufficient evidence to clear this initial hurdle, and we agree.

Zerante testified that she lacked personal knowledge that DeLuca or Proft knew of her campaign activities concerning Rees's candidacy. Moreover, she put forth no evidence, circumstantial or other, which would allow a trier of fact to draw the inference that defendants actually were aware of her political activities. Zerante's claim is made even more tenuous by her admission that she is a registered Republican and actually voted for DeLuca in the general election. Curiously, at oral argument, Zerante attempted to explain away her admission by asserting that DeLuca and Proft were unaware that DeLuca had earned her vote. This is precisely the point. Zerante's claim that she was retaliated against for her political affiliations cannot proceed absent some evidence that DeLuca or Proft were aware of those affiliations.

Seemingly aware of this problem, Zerante repositions her argument to assert that it was her political neutrality in the general election that caused her to be fired. Zerante notes that she declined to volunteer on the DeLuca campaign; Fares, conversely, served as the campaign's treasurer. Therefore, Zerante argues, because she elected not to participate in the campaign while her successor played an integral role in it success, one can readily draw the inference that the new administration chose to jettison an employee who had not demonstrated political loyalty in favor of one who had. We disagree.

It is undisputed that Zerante's decision to remain politically neutral in the general election is entitled to the same protection as would her choice to support a political opponent of DeLuca's. However, the fact that Zerante did not volunteer on the DeLuca campaign does little, if anything, to distinguish her from the scores of other city employees who also chose not to participate in campaign activities. Thus, even assuming Deluca's knowledge of Zerante's decision to remain on the sidelines during the mayoral race, Zerante must prove that her apolitical stance was a motivating factor behind her firing.

As support for her theory, Zerante points to Proft's deposition statement that the new administration was committed to bringing in "new blood" in key positions. However, DeLuca had campaigned on a platform of running the city like a business. Fares, who brought with him private sector experience, arguably advanced this goal. Zerante, who oversaw a department saddled with waste and inefficiency, arguably did not. Although Zerante was not given a formal performance review before she was fired, she was not owed one. A city employee may be fired for a good reason or for no reason at all, as long as she was not fired because of her constitutionally protected activities. *Garrett v. Barnes*, 961 F.2d 629, 633 (7th Cir. 1992). Fares' hiring does not advance Zerante's claim that she was fired for her political neutrality.

Zerante simply failed to adduce any evidence that her political activities or her decision to abstain from political involvement was a substantial or motivating factor in her

firing. Consequently, she cannot satisfy the second prong of a prima facie case.

Accordingly, we need not consider the issue of whether DeLuca and Proft had met their burden of demonstrating a legitimate, non-political reason for their decision to terminate Zerante's employment.

### III. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's granting of summary judgment.