In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1139

ANGELA N. LAFARY,

*Plaintiff-Appellant,*

*v.*

ROGERS GROUP, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:06-cv-1121-LJM-DML—**Larry J. McKinney**, *Judge.*

SUBMITTED SEPTEMBER 23, 2009[*]—DECIDED JANUARY 12, 2010

Before FLAUM, WOOD, and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.* Angela LaFary liked her job as
a field clerk at the Martinsville, Indiana, office of Rogers
Group, Inc. ("RGI"), a company in the business of pro-
ducing crushed stone for road construction and similar

---

[*] This court previously granted the parties' joint motion to
waive oral argument. Thus, the appeal is submitted on the
briefs and the record. See FED. R. APP. P. 34(f); CIR. R. 34(e).

uses. Shortly after she became pregnant, however, RGI transferred her to Bloomington, eventually letting her go after she had taken more than six months of leave necessitated by complications with her pregnancy. LaFary sued RGI for age discrimination, sex discrimination, and retaliation. The district court granted RGI's motion for summary judgment on all counts. LaFary appeals the decision on the sex discrimination and retaliation claims. As LaFary sees it, she was transferred from Martinsville to Bloomington because she was pregnant, and she lost her job because she asked for and took leave to deal with complications with her pregnancy. The district court found, however, that the evidence LaFary proffered at the summary judgment stage was not enough to support a *prima facie* case for either theory. It therefore granted summary judgment in RGI's favor. We affirm.

**I**

LaFary (then Angela May, but we use her married name throughout for simplicity) was hired by RGI in 1996. Over the years, she worked in a number of RGI's offices in southern Indiana as a field clerk. In 2003 she moved to the Martinsville office. Her supervisor, Michael DeMartin, told her that the position would serve as a stepping stone to a full-time sales position. Her duties in Martinsville were primarily administrative (payroll, accounts payable, customer service), but they also involved supporting sales operations.

In February 2004 LaFary married Carl "Nick" LaFary, an independent contractor who performed trucking jobs

for RGI's Martinsville operation. On March 15, 2004, LaFary found out that she was pregnant. As we explain in further detail below, the record is fuzzy about when others in her office learned about her pregnancy. Although LaFary eventually asserted in a written declaration prepared for this lawsuit that she gave DeMartin the news shortly thereafter, nowhere in the record is there solid evidence showing exactly when he heard about it.

On March 25, 2004, DeMartin emailed a few other RGI employees about, among other things, a proposal to transfer LaFary to Bloomington. The email identified certain "issues": it noted the appearance of a conflict of interest arising from an employee's marriage to an independent truck driver working for RGI, and it described three business needs related to the operation of the Oard Road facilities in Bloomington. The email concluded with a recommendation that RGI transfer LaFary to the Bloomington office to provide "live" administrative support in lieu of the existing automated answering system. It justified this proposal solely on the basis of its business needs; it did not (at this point) mention the alleged conflict of interest. DeMartin asserts that, at the time he sent the email, he did not know that LaFary was pregnant. On April 1 RGI transferred Nick LaFary to Bloomington; LaFary suggests that this move eliminated any possibility of a real or imagined conflict of interest at the Martinsville location.

In late April 2004, DeMartin informed LaFary that she was to be transferred to Bloomington. LaFary objected. By this time, DeMartin knew that LaFary was pregnant, because he responded to her complaints by suggesting that

she was just "emotional" because of her pregnancy. DeMartin told LaFary that the transfer was necessary to deal with new competition. DeMartin and RGI assert that this transfer was a promotion, and they note that the new position came with a raise. LaFary counters that the transfer was an adverse action, because her new job did not use the skills that she developed at Martinsville and took her off the track for a sales position.

LaFary worked at the Bloomington facility for less than two months before she was hospitalized from June 12 to June 16 for complications with her pregnancy. Although she originally thought that she would return to work in July, her doctor ordered her to stay home through her December due date plus an additional six to eight weeks of recovery. DeMartin expressed dismay at the prospect of such a long absence. LaFary took one week of vacation time, and then she was approved for 12 weeks of leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and 180 days of short-term disability leave. The parties dispute whether these latter periods were to run consecutively or concurrently. Running concurrently, as RGI believes that they did, LaFary's leave expired on December 22. RGI's policy was automatically to terminate the job of an employee who did not return to work after her approved leave expired. LaFary's email correspondence with DeMartin and others indicates that she was aware of this policy.

At the time LaFary's leave began, in July 2004, DeMartin suggested that her job would be waiting when she returned. Indeed, as late as January 10, 2005, employee

benefits administrator Duchess Dukes told LaFary that she still had a position with the company. On that same day, January 10, 2005, LaFary emailed DeMartin to confirm that fact. On January 11, DeMartin called LaFary and asked her about her plans. When she said that she would like to return to RGI, DeMartin told her that the company had ended her employment based on its leave policy and that it would not be able to rehire her because of a lack of business. Around the same time, RGI cut eight other positions because of the cancellation of one contract and the delay of another. DeMartin also told LaFary that she should apply for other RGI positions as they became available.

## II

LaFary did not accept DeMartin's olive branch. Instead, she filed Equal Employment Opportunity Commission complaints against RGI, alleging age discrimination, sex discrimination, and retaliation, focusing on RGI's decisions to transfer her to Bloomington and to let her go. (She later abandoned her age discrimination claim.) She followed up with a lawsuit in state court in Indiana, charging RGI with sex discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* RGI removed the case to the United States District Court for the Southern District of Indiana.

Before the district court, and now here for purposes of our *de novo* review, LaFary has relied on the familiar indirect method of proof. Using this approach, she was required to put before the district court evidence that (if believed by a trier of fact) would demonstrate that she was

a member of a protected class, that she suffered an adverse employment action, that she was performing her job satisfactorily, and that a similarly situated individual outside her protected class was treated more favorably. *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005 (7th Cir. 2001). For pregnancy discrimination cases, the plaintiff also must establish that her employer knew she was pregnant. *Griffin v. Sisters of St. Francis, Inc.*, 489 F.3d 838, 844 (7th Cir. 2007). If the plaintiff satisfies these elements, the employer must identify a nondiscriminatory reason for the action taken; if it does so, the plaintiff may avoid summary judgment only if she can produce evidence that the proffered reason is pretextual. *Clay*, 253 F.3d at 1005. The parties agree that LaFary was a member of a protected class and performed her job satisfactorily. They also agree that RGI's decision to fire her (or not to restore her job) constitutes an adverse employment action.

The district court granted summary judgment for RGI on December 22, 2008, finding that DeMartin did not know that LaFary was pregnant when he decided to transfer her to Bloomington, that the transfer was not an adverse action, and that with respect to the termination of her employment she failed to identify a similarly situated person who was directly comparable to her in all material respects except for sex.

### III

### A

LaFary first alleges that RGI's decision to transfer her from Martinsville to Bloomington was the result of sex

(or pregnancy) discrimination. The district court granted RGI's motion for summary judgment, finding that LaFary could not establish a *prima facie* case. In particular, it concluded that the transfer was not an adverse employment action and there was no competent evidence demonstrating that DeMartin knew that LaFary was pregnant when he decided to transfer her.

If the district court was correct in either of those findings, LaFary cannot succeed. We consider first the question whether a trier of fact could have viewed the move to Bloomington as an adverse employment action. Employment decisions are adverse if a nominally lateral transfer "significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted." *Nichols v. S. Ill. Univ.-Edwardsville,* 510 F.3d 772, 780 (7th Cir. 2007) (quoting *O'Neal v. City of Chicago,* 392 F.3d 909, 911 (7th Cir. 2004)). See *Burlington N. & S. F. R. Co. v. White,* 548 U.S. 53, 68 (2006) (asking whether "a reasonable employee would have found the challenged action materially adverse").

LaFary maintains that her old job in Martinsville was a stepping stone to a full-time sales position, while the Bloomington position involved only answering the phones, accounts payable, and payroll. She suggests that the transfer was adverse because the Bloomington job did not allow her to use the skills she developed at Martinsville. RGI responds that the transfer was a promotion, it came with a pay raise, and it would have

included more responsibilities if she had stayed at Bloomington longer than she did. It is a close question whether LaFary's two-month stint in Bloomington, during which she was assigned less challenging tasks, provides enough evidence to show that the move to Bloomington was adverse, in the face of RGI's evidence that it entailed both a pay raise and a more expansive job description. We need not decide this issue, however, since LaFary has not undermined the district court's other ground for summary judgment.

LaFary did not introduce evidence tending to show that RGI knew that she was pregnant when it decided to transfer her to Bloomington. She does not dispute that DeMartin made his decision on or before March 25, 2004, which is the date when DeMartin emailed other RGI employees about the proposed transfer. The March 25 email stated a clear position, and DeMartin eventually executed the recommendation exactly. There is no evidence that new circumstances after that date had anything to do with DeMartin's decision to send her to Bloomington. LaFary must therefore establish that DeMartin knew that she was pregnant on or before March 25.

LaFary herself learned that she was pregnant on March 15. The only evidence LaFary offers regarding the date by which DeMartin learned of her pregnancy is the written declaration that we mentioned earlier, in which she asserts that "Mr. DeMartin was aware of the fact that I was pregnant shortly after I became pregnant." This declaration suffers from two problems. Most signifi-

cantly, even in the context of a case where the precise date when DeMartin learned of her pregnancy was important, LaFary does not specify whether DeMartin knew before, on, or after March 25, the critical date for our inquiry. Without evidence establishing that fact, LaFary cannot prove a critical element of her case.

Moreover, this declaration came after a deposition in which LaFary admitted that she did not know when DeMartin or the other decision-makers learned that she was pregnant. A plaintiff cannot defeat a motion for summary judgment by "contradict[ing] deposition testimony with later-filed contradictory affidavits." *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005). LaFary has boxed herself into a corner. If her declaration establishes that she has specific knowledge of the date on which DeMartin learned she was pregnant, *Ineichen* would bar her declaration because it would contradict the deposition. If we interpret the phrase "shortly after" in her declaration as a concession that she never has been certain about the precise time when DeMartin learned that she was pregnant, then she has not offered any evidence that would show that he knew as of the time he sent the March 25 email.

In the end, LaFary has not presented evidence that would support a finding that DeMartin knew that she was pregnant when he decided to transfer her to Bloomington. The district court thus properly granted RGI's motion for summary judgment on LaFary's claim that the transfer was motivated by sex or pregnancy discrimination.

B

LaFary also contends that RGI's decisions to terminate her employment and then not to rehire her violated Title VII's prohibitions against pregnancy discrimination and retaliation. Her evidence, however, fell short of raising a genuine issue of fact on these points. First, it does not show that RGI violated its own policy by counting FMLA and short-term disability leave concurrently. LaFary's own emails, along with contemporaneous statements of various RGI employees, establish at least a *de facto* policy that called for her automatic discharge after 180 days. Moreover, LaFary's evidence does not establish that a similarly situated person outside her protected class was treated more favorably. See *Clay*, 253 F.3d at 1005. After initially naming a number of potential comparators, LaFary focuses on Admin Menjivar. Menjivar took short-term disability leave for 187 days, but he was then reinstated. RGI dismissed LaFary pursuant to the same policy, but it did not rehire her after 199 days of leave. Although these times are comparable, other critical details are not. RGI asserts that it did not rehire LaFary because of its financial condition: it lost one contract and another was delayed. As we noted, RGI eliminated eight positions around the time of LaFary's potential return. In contrast, as LaFary tacitly admits, RGI was enjoying financial success at the time it rehired Menjivar. LaFary also had no evidence that RGI had a particular need for her skills; in contrast, the company rehired Menjivar because it needed the expertise that he possessed. These differences are enough to show that Menjivar was not similarly situated to LaFary. Given the absence of

evidence raising a genuine issue of fact, the district court was correct to grant RGI's motion for summary judgment on this claim as well.

* * *

For these reasons, we AFFIRM the judgment of the district court.