In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1975

CAROL EVERETT,

*Plaintiff-Appellant,*

*v.*

COOK COUNTY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 5440—**Virginia M. Kendall**, *Judge.*

ARGUED JUNE 6, 2011—DECIDED AUGUST 24, 2011

Before KANNE, EVANS\*, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Dr. Carol Everett sued Cook County, alleging that the County's decision to lay her off (and retain another employee instead) was predicated on her Caucasian ethnicity, in violation of Title VII of the

\* Circuit Judge Evans died on August 10, 2011, and did not participate in the decision of this case, which is being resolved by a quorum of the panel under 28 U.S.C. § 46(d).

Civil Rights Act, and her apolitical status, in violation of 42 U.S.C. § 1983 and the *Shakman* decree. The district court granted summary judgment in favor of Cook County, finding that Everett failed to point to evidence that tended to show any discriminatory animus by the County. We affirm.

## I. BACKGROUND

Everett began working as a dentist at Cook County's Cermak Health Services in 1982. Cermak is a health care facility dedicated to providing medical and dental treatment to the thousands of detainees housed at the Cook County Jail. During her extended tenure at Cermak, Everett worked at dental clinics set up throughout the jail, where she supplied both emergent and preventative dental care to the inmate population.

By late 2006, Cook County was in the throes of a budget crisis. The County had a budget shortfall of 500 million dollars, and Cook County President Todd Stroger determined that 100 million dollars of that shortfall had to be cut from the County's health care budget. In December 2006, Stroger directed Dr. Robert Simon, the Interim Bureau Chief of Cook County's Bureau of Health, to submit recommendations for health care budget cuts. Stroger gave Simon until February 2007 to find ways to cure the health care budget's woes.

Faced with a time crunch, Simon quickly formed a team to assess all of Cook County's health care programs and recommend ways to trim those programs' budgets. One

member of that team was Dr. Eileen Couture, a physician at Cermak. Couture was to review the budget at Cermak and draft a report recommending cuts, including staff reductions.

The dental budget at Cermak was one of Couture's many problems. She soon discovered that the dental care requirements for jails were minimal and that Cermak could still provide sufficient care with only one dentist. She told Simon of her discovery, and he agreed that Cermak could survive with a single dentist. That left Couture with the unenviable task of picking the one dentist to remain at Cermak following the layoff.

Couture had five dentists to choose from: Dr. Allen Knox, Dr. Jack Liu, Dr. Shandra Bundy-Smith, Dr. Ronald Townsend, and Everett. Knox was the dental administrator, while the other doctors were staff dentists. Because the entire dental program was going to be dismantled and reduced to one dentist and two assistants providing emergent care only, Couture determined that the remaining dentist had to have some indicia of management experience, as well as a history of flexibility, productivity, emergent clinical skill, and responsiveness to other physicians' needs.

Based on this criteria, Couture concluded that Townsend was the most qualified to take over the program at Cermak. Couture noted that Townsend appeared to have prior administrative experience, as he often served as the acting director of Cermak's dental unit when Knox was away on vacation. Couture also knew, by virtue of her work in Cermak's emergency room, that Townsend

provided good patient care, while at the same time remaining cognizant of the problems associated with servicing an inmate population. Her experiences with Townsend were echoed by other colleagues, who told Couture that Townsend was a productive, responsive, skilled, and flexible dentist. Couture decided against Everett based on her lack of supervisory experience, as well as some informal complaints she heard from other physicians at Cermak regarding Everett's pace.

In February 2007, Couture submitted her report to Simon. She recommended, among other things, slashing the budget at Cermak and retaining Townsend as the only remaining dentist on staff. The program would then be restructured to provide jail inmates with emergent dental care only. Simon agreed with Couture's recommendations, and the layoff decisions were delivered to the other dentists in March 2007.

Disappointed by the news of not being selected, Everett filed an appeal of her layoff. On June 26, 2007, Everett was sent a letter in anticipation of her appeal, explaining the bases for the layoff decisions. The letter provided that a number of factors were looked at in picking the remaining dentist, including time management skills, the ability and desire to assume a management role, supervisory skills, and clinical expertise. Those factors, the letter explained, led Couture and Simon to conclude that Townsend should remain at the center following the reduction in staff. At the hearing, Couture testified that, given all of those factors, she believed that Townsend was the best choice for the position. She based this

decision on her own observations in the emergency room setting, her consultation with other professionals, the fact that Townsend seemingly had some administrative experience, and the fact that he had a desire to assume leadership positions. The hearing officer ultimately denied Everett's appeal, finding no violation of County procedures.

Everett remained convinced that there was something suspicious about her termination. On May 21, 2008, she sued Cook County in the United States District Court for the Northern District of Illinois, claiming that the decision to lay her off was based on impermissible criteria. Everett argued that political considerations infected the layoff decision, in violation of the *Shakman* decree and 42 U.S.C. § 1983. She also claimed that the choice to lay her off was predicated on both her Caucasian ethnicity and her female gender, in violation of Title VII of the Civil Rights Act. Everett also sought a state law petition for writ of certiorari, attacking the agency decision upholding her layoff. The district court granted summary judgment in favor of Cook County on all of Everett's federal claims, finding that she failed to put forth evidence of discriminatory animus. The district court then relinquished jurisdiction over Everett's remaining state law claim.

Everett timely appealed the grant of summary judgment in favor of Cook County.

## II. ANALYSIS

On appeal, Everett contests only the grant of summary judgment for her political and race discrimination claims. We review a grant of summary judgment *de novo*, construing all facts and drawing all inferences in the light most favorable to the non-movant. *Grigsby v. LaHood*, 628 F.3d 354, 358 (7th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court must grant a motion for summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Bio v. Fed. Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005).

Everett's first argument against summary judgment is one common to all of her claims. She contends that the "conscious destruction" of two documents—Couture's report to Simon and Couture's notes related to the layoff—warrants an inference that the documents contained information adverse to the County, an inference a jury could rely upon in finding for Everett. But conscious destruction of documents alone "does not warrant an inference that the document[s], if produced, would have contained information adverse to the employer's case." *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002). Rather, in order to draw an inference that the absent documents contained negative information, Everett must show that the documents were intentionally

destroyed in bad faith. *Norman-Nunnery v. Madison Area Technical Coll.*, 625 F.3d 422, 428 (7th Cir. 2010).

Everett's spoilation argument falters for a number of reasons. First, Everett does not specifically explain what evidence, if any, satisfies the bad faith requirement, meaning that she has not satisfied her burden. This oversight is hardly surprising, given that she does not bother to discuss the legal framework for the spoilation inference at all. (This lack of argumentation is a theme throughout Everett's brief: she routinely fails to lay out the legal framework for her claims or cite law in support of her arguments.) Second, the record evidence does not suggest that the documents were destroyed "for the purpose of hiding adverse information." *Id.* Couture's testimony shows that she discarded some, if not all, of the documents not in a last-ditch effort to get rid of information that could hurt the County, but rather as a routine effort to clean out her office before she departed Cermak for greener pastures. In any event, without specifically pointing us to some evidence of bad faith, Everett cannot rely on a spoilation inference to get her past summary judgment.[1]

---

[1] Everett also claims that we cannot rely, at the summary judgment phase, on any testimony offered by the County to explain why it chose Townsend over Everett, as that testimony would be contradicted by the absent documents. But for a factfinder to be able to make the inferential leap that those documents would contradict the County's testimony, Everett would need to show that the documents were destroyed in

(continued...)

We proceed next to Everett's twin political discrimination claims. Everett claims that Couture and Simon picked Townsend not because he was the best candidate, but because he engaged in political activity favorable to Simon's superior, President Stroger. The entirety of Townsend's political activity consisted of a donation of $300 in September 2000 to the 8th Ward Regular Democratic Organization (where Stroger's family allegedly has a political base) and two donations totaling $225 in 2006 to the Citizens for Lyle (a group that raises political funds for a former Stroger organizer). Everett engaged in no political activity, and it was this lack of activity that she says motivated her termination.

Everett's political discrimination claims are premised on the *Shakman* decree and 42 U.S.C. § 1983. The *Shakman* decree forbids the County from "conditioning, basing, or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time a government employee, upon or because of any political factor.*" Shakman v. Democratic Org. of Cook County*, 481 F. Supp. 1315, 1358 (N.D. Ill. 1979), *vacated sub nom*. *Shakman v. Dunne*, 829 F.2d 1387, 1389 (7th Cir. 1987). The First Amendment—made actionable through § 1983—similarly prohibits a public employer from firing an employee for "purely political reasons," with certain exceptions not applicable to the

---

[1] (...continued)

bad faith. As we have already said, Everett has failed to specifically point to evidence to satisfy that burden.

case at bar. *Zerante v. DeLuca*, 555 F.3d 582, 584-85 (7th Cir. 2009).

Both *Shakman* claims and § 1983 claims require a plaintiff to show that political considerations led to the ultimate employment decision, *see Shanahan v. City of Chicago*, 82 F.3d 776, 780 (7th Cir. 1996), so we will start there. Everett argues that she has established causation by virtue of evidence of numerous procedural irregularities in the dentist layoff process, irregularities that she claims could permit a jury to infer discrimination. To be sure, an employer's failure to abide by its own internal procedures may, combined with other evidence, raise the specter of discriminatory animus. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 723 (7th Cir. 2005). But for a jury to be able to infer any impropriety based on an employer's failure to abide by its own procedures, the employee must show that there was an actual procedure in place that served to bind the employer's discretion. *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008).

As her first alleged procedural irregularity, Everett claims that the County departed from Rule 7 of its personnel rules. Rule 7, Everett contends, has two requirements: the County must consider seniority as a part of any layoff, and the County's Bureau of Human Resources must transmit a seniority list to the Bureau of Health Services during all layoffs. By failing to consider seniority or transmit a seniority list, Everett argues that the County contravened Rule 7, thereby raising an inference of suspicious conduct.

We do not believe Everett has offered sufficient evidence which, if believed, would permit a factfinder to conclude that the County violated Rule 7. Even read in the light most favorable to Everett, Rule 7 does not in any way compel the County to consider seniority as a part of a reduction in force. The relevant portion of Rule 7 provides only that, "[w]here applicable," Human Resources must transmit a list of the names of personnel "having the least seniority in those classifications affected by the reduction in force." To the extent that Everett argues that this list requirement was violated, she does not offer evidence (or even argument) as to why the dentist layoffs were the type of "applicable" situation where the list requirement was triggered. Without something to satisfy that point, she has not established that the County breached Rule 7, and thus her argument fails.

Everett's remaining procedural irregularities are anything but. She makes much of the fact that the County neither consulted the *Shakman* compliance officer nor conducted interviews as a part of the dentist layoff, as the County did for some of the contemporaneous physician layoffs. But, as was the case for her argument about seniority, there was no procedure that required interviews or consultation with the *Shakman* officer as a part of a layoff; there wasn't even evidence offered to show that the County had a consistent past practice of engaging in those measures. Because the County did not breach any procedures in deciding not to consult the *Shakman* officer or conduct interviews for the dentist

reduction in force, we see nothing inherently suspicious about its conduct.

We note, out of an abundance of caution, that even if we assumed there was something irregular about the County's conduct as it relates to Rule 7, interviews, or the *Shakman* officer, Everett's claim would still lack merit. For Everett to establish that the County was motivated by political considerations, she had to show—as a threshold matter—that the County was aware of Everett's or Townsend's political activities. *Gunville v. Walker*, 583 F.3d 979, 984 (7th Cir. 2009); *Hall v. Babb*, 389 F.3d 758, 762-63 (7th Cir. 2004). There was no evidence that the decision-makers were aware of Everett's apolitical status or Townsend's political contributions. Without such evidence, the entry of summary judgment was proper. *See, e.g., Holmes v. Potter*, 384 F.3d 356, 362 (7th Cir. 2004) ("[A]n employer's lack of knowledge about a protected category rings a death knell for a discrimination claim.").

We proceed to Everett's final claim: that the County discriminated against her based on her Caucasian ethnicity when it picked Townsend, an African American, over her. Title VII of the Civil Rights Act prohibits an employer from firing an employee based on race, a prohibition that includes so-called "reverse discrimination" against white employees. *See Mlynczak v. Bodman*, 442 F.3d 1050, 1057 (7th Cir. 2006). To proceed past summary judgment on a Title VII claim, an employee may utilize the direct or indirect method of proof. *Sartor v. Spherion Corp.*, 388 F.3d 275, 278 (7th Cir. 2004).

Everett insists that she has offered enough evidence to proceed under both the direct and indirect methods. Under the direct method, a plaintiff must offer direct evidence of discrimination—an outright admission that an action was taken for discriminatory reasons—or circumstantial evidence that points to discriminatory animus through a longer chain of inferences. *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 298 (7th Cir. 2010). Circumstantial evidence can take on many forms, and includes "evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Sun v. Bd. of Trs.*, 473 F.3d 799, 812 (7th Cir. 2007). Whatever circumstantial evidence is offered must, in the end, "point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

Everett relies on circumstantial evidence for her direct method claim, arguing that she was qualified to be retained, that she was passed over in favor of Townsend, and that the reasons given for choosing Townsend were pretextual. To establish pretext, Everett must show that the County's reasons for its decision were dishonest, and not merely inaccurate or poorly considered. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006).

It is sufficient evidence of pretext that Everett lacks. Couture claimed that she chose Townsend because he was the most qualified for the post, based on his evinced desire to lead, productivity, administrative experience, clinical skill, and flexibility with the other physicians

at Cermak.[2] To show pretext, Everett points us to a productivity report from three years before the layoff that paints Everett as slightly more productive than Townsend, a statement by Knox—the former director at Cermak—that Everett was a productive dentist, and another statement by Knox that Townsend's acting director duties at the clinic provided him with only minimal administrative experience. But even read in the light most favorable to Everett, none of this evidence shows that Couture's reasons for choosing Townsend over Everett were phony. The dated productivity report, which Couture did not review in making her decision, does not establish that Couture lied about her reasons for

---

[2] Everett insists that we cannot, at the summary judgment phase, rely on evidence proffered by the County that comes from interested witnesses, a proposition that would bar us from considering the County's reasons for choosing Townsend. For this, she cites to the Supreme Court's statement in *Reeves* that "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (internal quotation marks omitted). But Everett misreads the scope of *Reeves*. Even if testimony comes from interested employees, "[w]e do not interpret the quoted language so broadly as to require a court to ignore the uncontroverted testimony of company employees or to conclude, where a proffered reason is established through such testimony, that it is necessarily pretextual." *Traylor v. Brown*, 295 F.3d 783, 791 (7th Cir. 2002).

choosing Townsend; at best, it shows that her decision was poorly researched, as one might expect given the time constraints of the layoff. The fact that a decision was poorly considered is not enough to establish pretext. *See Van Antwerp*, 627 F.3d at 298. More importantly, the report does not dispute the myriad other bases for Couture's decision, specifically Townsend's apparent supervisory experience. *See Fischer v. Avanade, Inc.*, 519 F.3d 393, 403-04 (7th Cir. 2008) ("[W]hen a defendant has offered multiple nondiscriminatory reasons for its hiring decision, showing that one of these reasons is pretextual is not enough . . . ."). And while Knox's deposition testimony suggested that Townsend gained only minimal supervisory experience from his work as acting director, Knox conceded that Townsend gained *some* experience while serving in that capacity. In the end, there is nothing to suggest that Couture lied about her proffered reasons for choosing Townsend over Everett, and thus Everett's direct claim lacks merit.

Everett's indirect claim fares no better, again partly due to her underdeveloped argumentation. To move past summary judgment under the indirect method, a plaintiff must first establish a prima facie case of discrimination. In the context of a termination case, that prima facie case normally consists of evidence showing that the plaintiff was a member of a protected class, that she suffered an adverse employment action, that she was performing her job satisfactorily, and that a similarly-situated individual outside of her protected class was treated more favorably. *LaFary v. Rogers Grp., Inc.*, 591 F.3d 903, 907 (7th Cir. 2010). But because this is a reverse-

discrimination case, "we have replaced the first element with a requirement that the plaintiff show 'background circumstances' suggesting that the employer discriminates against the majority." *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010). Everett's claim stalls at the prima facie point: she does not explain what evidence shows background circumstances of discriminatory conduct by the County. Because Everett failed in her prima facie burden, we must reject her claim under the indirect method of proof. *See Antonetti v. Abbott Labs.*, 563 F.3d 587, 592 (7th Cir. 2009). And even if Everett had satisfied her prima facie case, her claim would still be wanting, as she has not established that the County's reasons for choosing Townsend were pretextual. *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 743 (7th Cir. 2011).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.