MEMORANDUM **
Sharon Brockbank (“Brockbank”) appeals the district court’s grant of summary judgment in favor of her former employer, U.S. Bancorp (“U.S. Bank”), on her age and gender discrimination claims under the Age Discrimination in Employment Act (“ADEA”) and Title VII of the CM Rights Act of 1964, respectively. We reverse in part, affirm in part, and remand.
ADEA Claim
The district court correctly found that there was no direct evidence of age discrimination because the alleged ageist comments relied upon by Brockbank, when viewed in context, are insufficient to directly prove age discrimination. See Enlow v. Salem-Keizer Yellow Cab Co., 389 F.3d 802, 812 (9th Cir.2004) (defining “direct evidence”). Moreover, as the district court noted, the comments “lack a temporal and contextual connection” to Brock-bank’s termination.
The district court, however, erred in finding that Brockbank failed to establish through circumstantial evidence a pri-ma facie case for age discrimination. To establish a prima facie case, Brockbank must show that she was: “(1) at least forty years old, (2) performing [her] job satisfac *606 torily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise ‘giving rise to an inference of age discrimination.’ ” Diaz v. Eagle Produce, Ltd., 521 F.3d 1201, 1207 (9th Cir.2008) (citation omitted). “An inference of discrimination can be established by showing the employer had a continuing need for the employees’ skills and services in that their various duties were still being performed ... or by showing that others not in their protected class were treated more favorably.” Id. (internal quotation marks and citations omitted).
Here, Brockbank was at least forty years old and was discharged. The district court correctly found a triable issue as to whether she was performing her job satisfactorily. However, the district court erred in finding no triable issue as to the last element — whether Brockbank was discharged under circumstances giving rise to an inference of age discrimination. Following Brockbank’s termination, U.S. Bank had a continuing need for her skills and services. Her supervisor, Michael Sullivan (“Sullivan”), reassigned her accounts to the remaining trust officers, all of whom were substantially younger than Brockbank, with the exception of Rita Snodgrass, who received an insignificant portion of Brockbank’s accounts. This evidence, when considered with the ageist comments made by Sullivan, is sufficient to establish a prima facie case. See id. at 1211 (noting that “we treat the last element of the prima facie case with ‘flexibility’ ”); see also Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1094 (9th Cir.2005) (observing that the “degree of proof necessary to establish a prima facie case ... is minimal and does not even need to rise to the level of a preponderance of the evidence”).
Once a prima facie case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). U.S. Bank has met its burden by showing that Brockbank’s termination was due to misuse of her corporate credit card. Specifically, U.S. Bank contends that Brockbank violated policy by charging on her corporate card expenses for a Verizon cellular phone family plan (which included lines for her children), internet service, and anti-virus software, even though she did not seek reimbursement for these charges.
The burden thus shifts back to Brockbank to establish a triable issue as to whether U.S. Bank’s proffered reason was pretextual. See Diaz, 521 F.3d at 1212; see also Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112-13 (9th Cir.2011) (stating that “a plaintiffs burden to raise a triable issue of pretext is ‘hardly an onerous one’ ” and can be met by “showing that unlawful discrimination more likely than not motivated the employer” or “by showing that the employer’s proffered explanation is unworthy of credence”). Brock-bank has met her burden.
First, U.S. Bank claims that it has a “zero tolerance” policy for credit card misuse, and employees who deliberately charge personal expenses on the corporate card are terminated. However, U.S. Bank’s purported “zero tolerance” policy is contradicted by its own written Credit Card Policy, set forth in the U.S. Bank Code of Ethics, which clearly contemplates employer discretion in terms of punishment. The written policy provides that misuse or “excessive personal use” of the card “may” result in discipline, including termination.
*607 Second, Broekbank has raised a triable issue as to whether the purported “zero tolerance” policy was evenly applied. Sullivan deliberately misused his credit card on at least two occasions by substantially exceeding the authorized amounts for client gifts and alcohol purchases, but he was neither disciplined nor terminated.[1] Although U.S. Bank attempts to distinguish Sullivan’s use as business-related, Broekbank also testified that she believed her phone and internet charges were proper because they were, at least in part, business-related. Broekbank was allowed to work from home, and she claims that her use of the internet and phone were for business as well as personal matters. Brockbank’s contention is arguably supported by the written Credit Card Policy, which allows “non-reimbursable personal expenses incurred in the course of business activities that are incidental in nature and where it is not otherwise practical for the employee to pay for those expenses separately.”
The dissent relies heavily on Sullivan’s prior warning to Broekbank to remove the Verizon phone charges from her corporate card. Dissent at 3. The evidence, however, cuts both ways. Sullivan testified that in 2008, U.S. Bank’s policy changed such that charges for personal phones were no longer permitted. Sullivan then counseled all employees about the change, including Broekbank, because he was aware that she had the Verizon charges on her card.
Sullivan’s testimony corroborates Brock-bank’s own belief that her Verizon charges, at least prior to the policy change, was appropriate. Indeed, no discipline was ever imposed, nor was she previously counseled regarding the charges. To the extent U.S. Bank argues that the prior policy did not allow such charges, then the fact that Sullivan knew about them but took no action calls into question whether U.S. Bank really had a “zero tolerance” policy.
Further, the timing of Sullivan’s discussion with Broekbank regarding the policy change is unclear. While Sullivan at one point in his deposition claims that he counseled her in 2008, he admitted several pages later that he does not recall whether it was in 2008 or early 2009. Darlene Bills’s notes of her conversation with Sullivan appear to suggest that he spoke to Broekbank about the change in early 2009. Broekbank was terminated in March of 2009. The timing of the conversation is important because, viewing the evidence in the light most favorable to Broekbank, giving her two months to comply with a policy change, during which time she was undis-putably trying to remove the charges, supports her claim of pretext.
Even U.S. Bank’s other employees appear confused about the credit card policy. Jennifer Hogaboom, a 27-year employee, testified that a “slew” of employees mistakenly used their cards, including Judy Rudd, who charged business suits to her card, but no one else was ever terminated.[2] *608 Hogaboom’s understanding was that, so long as the employee pays for the charges and does not seek reimbursement, there would be no basis for termination. Moreover, under U.S. Bank’s “zero tolerance” policy, occasional and accidental misuse is tolerated. It is unclear why Brockbank’s mistaken belief that her charges comported with policy was treated differently than other employees’ claims that they, too, mistakenly used the card for personal expenses.
Finally, the factual disputes regarding U.S. Bank’s policy and its application should be viewed in the context of ageist comments made by Sullivan in the years leading up to Brockbank’s termination. These comments include, among others, that Brockbank’s hair and clothes were “not appropriate for her age,” “she looked ridiculous for her age,” and “she wasn’t taking care of herself.” Sullivan also allegedly forced an older employee, Carol Jones, to retire, and had said that he wanted to replace Jones with someone younger.
We find that Brockbank has established sufficient evidence of pretext to survive summary judgment. See Evanston Ins. Co. v. OEA, Inc., 566 F.3d 915, 919 (9th Cir.2009) (“We do not weigh the evidence or determine the truth of the matter; instead, we only determine whether there is a genuine issue for trial.”). Therefore, we reverse the district court’s dismissal of the ADEA claim.
Gender Discrimination Claim
The district court did not err in dismissing the gender discrimination claim because there was no evidence of gender-based preferential treatment.[3]
The parties shall bear their own costs.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. The dissent contends that Broekbank has failed to link Sullivan’s misuse to the Credit Card Policy and, therefore, “[wjhether Sullivan violated one of U.S. Bank’s other policies is irrelevant to whether its corporate credit card policy was evenly applied.” Dissent at 6. The dissent reads the evidence too narrowly. The written policy explicitly requires all employees "to follow U.S. Bank’s guidelines regarding business-related expense and expense reimbursement procedures.” Drawing all reasonable inferences in Brockbank’s favor, as we must do here, the policy can be reasonably viewed as encompassing Sullivan’s violations.

. During her deposition, Darlene Bills could not name anyone who had been terminated for credit card misuse, although she did recall two such instances. After discovery closed, and in support of summary judgment, she provided a declaration naming three people, *608 but given the timing, Brockbank had no chance to cross-examine her as to the full circumstances of those employees' termination.

. Brockbank does not appeal the dismissal of her hostile environment claim, and her brief reference in a footnote to the unlawful retaliation claim is not sufficient to raise a challenge on appeal. Hilao v. Estate of Marcos, 103 F.3d 767, 778 n. 4 (9th Cir.1996). In any event, that claim would still fail, as there is no evidence of gender discrimination.