# SUPREME COURT OF THE UNITED STATES

## RONALD HITTLE *v.* CITY OF STOCKTON, CALIFORNIA, ET AL.

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 24–427.   Decided March 10, 2025

The petition for a writ of certiorari is denied.

JUSTICE THOMAS, with whom JUSTICE GORSUCH joins, dissenting from the denial of certiorari.

To prevail on a Title VII disparate-treatment claim, a plaintiff must prove that the defendant intentionally discriminated against him because of a protected trait. See 42 U. S. C. §2000e–2(a)(1). In *McDonnell Douglas Corp.* v. *Green*, 411 U. S. 792 (1973), this Court announced a three-part burden-shifting framework to help "bring the litigants and the court expeditiously and fairly to this ultimate question" when the plaintiff relies on circumstantial evidence. *Texas Dept. of Community Affairs* v. *Burdine*, 450 U. S. 248, 253 (1981). Despite seemingly good intentions, this "judge-created doctrine has been widely criticized for its inefficiency and unfairness." *Nall* v. *BNSF R. Co.*, 917 F. 3d 335, 351 (CA5 2019) (Costa, J., specially concurring). The doctrine has "spawn[ed] enormous confusion" in the lower courts. *Brady* v. *Office of Sergeant at Arms*, 520 F. 3d 490, 494 (CADC 2008) (majority opinion of Kavanaugh, J.). And, at least some of its applications at summary judgment strike me as difficult to square with Federal Rule of Civil Procedure 56. See *Tynes* v. *Florida Dept. of Juvenile Justice*, 88 F. 4th 939, 952–954 (CA11 2023) (Newsom, J., concurring) (describing the problem). I would have taken this opportunity to revisit *McDonnell Douglas* and clarify what role—if any—it ought to play in Title VII litigation. Because the Court declines to do so, I respectfully dissent.

I

The plaintiff in *McDonnell Douglas* had worked as a mechanic and laboratory technician for the McDonnell Douglas Corporation before being laid off as part of a general reduction in force. 411 U. S., at 794. After the layoff, the plaintiff participated in civil rights protests against McDonnell Douglas's employment practices. *Id.*, at 794–795. When McDonnell Douglas posted an opening for a new mechanic position, the plaintiff applied but was not hired. *Id.*, at 796.

The plaintiff sued his former employer, alleging that it had refused to rehire him because of his race. *Id.*, at 797. The employer responded that its refusal was not because of the plaintiff's race, but because he had engaged in illegal demonstrations. See *ibid.* The District Court initially dismissed the plaintiff's suit, but the Eighth Circuit reversed and remanded for a bench trial. *Id.*, at 797–798. To guide the District Court on remand, the Eighth Circuit "attempted to set forth standards to govern the consideration" of the claim. *Id.*, at 798. This Court granted certiorari to clarify the controlling standards. *Ibid.*

The Court explained that "the issue at the trial" would be whether the employer refused to hire the plaintiff because of his race or because of his participation in unlawful conduct. *Id.*, at 801. To help the trial court make that ultimate determination, this Court offered a three-part framework for analyzing the circumstantial evidence to determine the real reason for the employer's actions. First, the Court explained, the plaintiff "must carry the initial burden" of "establishing a prima facie case of racial discrimination." *Id.*, at 802. A plaintiff can make this showing with evidence that (1) "he belongs to a racial minority," (2) "he applied and was qualified for a job for which the employer was seeking applicants," (3) "despite his qualifications, he was rejected," and (4) "after his rejection, the position remained open and the employer continued to seek applicants from persons of

complainant's qualifications." *Ibid.* If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Ibid.* If the defendant carries that burden, then the plaintiff must have an "opportunity to show that [the employer's] stated reason for [rejecting him] was in fact pretext." *Id.*, at 804.

This framework was designed to help the trial court evaluate the circumstantial evidence offered by both sides and make an ultimate finding as to liability. See *id.*, at 807. In other words, the framework was intended to offer "'a sensible, orderly way to evaluate the evidence'" that "'bears on the critical question of discrimination.'" *Postal Service Bd. of Governors* v. *Aikens*, 460 U. S. 711, 715 (1983).

The Court made no attempt to ground its new evidentiary framework in the text of Title VII or any other source of law. The Court appears to have made it out of whole cloth.

In the years since *McDonnell Douglas*, the doctrine has "taken on a life of its own." *Tynes*, 88 F. 4th, at 952 (Newsom, J., concurring). Although initially developed for use in a bench trial,[1] the *McDonnell Douglas* burden-shifting framework has since become "the presumptive means of resolving Title VII cases at summary judgment." 88 F. 4th, at 952; see also *Jackson* v. *VHS Detroit Receiving Hospital, Inc.*, 814 F. 3d 769, 776 (CA6 2016) ("[C]ourts typically apply the three-part burden-shifting framework developed" in *McDonnell Douglas* "to determine whether the plaintiff has proffered sufficient evidence to survive summary judgment").

## II

The application of *McDonnell Douglas* in the summary-judgment context has caused significant confusion.

―――――――――

[1] Title VII did not provide for jury trials until 1991. See Civil Rights Act of 1991, §102, 105 Stat. 1073 (establishing jury trial right).

Some confusion likely arises from the fact that the framework was not designed with summary judgment in mind. It was created as a tool for resolving the "ultimate question" in a Title VII case—that is, whether the defendant intentionally discriminated against the plaintiff. *Burdine*, 450 U. S., at 253. But, when a defendant moves for summary judgment, the question for the court is not whether the defendant has *in fact* engaged in unlawful discrimination. Instead, the question is whether the plaintiff has proffered enough evidence to *allow* a reasonable factfinder to find a Title VII violation. See Fed. Rule Civ. Proc. 56(a).

Because the *McDonnell Douglas* framework was designed for use in a bench trial, the language this Court has used to describe the framework does not neatly track the plaintiff's summary-judgment task.[2] For example, the first step requires a plaintiff to "establis[h] a prima facie case." 411 U. S., at 802. And, the third step requires the plaintiff to show, "by a preponderance of the evidence," *Burdine*, 450 U. S., at 253, that the employer's stated reason "was in fact pretext" for discrimination, *McDonnell Douglas*, 411 U. S., at 804. But, a plaintiff need not establish or prove any elements—by a preponderance or otherwise—to survive summary judgment. At that stage, he need only offer enough evidence to create a genuine dispute of material fact. See *Celotex Corp.* v. *Catrett*, 477 U. S. 317, 322 (1986). At least a few courts have suggested that this Court's language "likely bears some responsibility for the continuing confusion" regarding *McDonnell Douglas*. See, *e.g.*, *Tynes*, 88 F. 4th, at 945.

Whatever the origins of the confusion, it is producing troubling outcomes on the ground. Lower court decisions reflect "widespread misunderstandings about the limits of

———————
[2] As far as I can tell, this Court has never applied *McDonnell Douglas* in a Title VII case in the summary-judgment context. See *Tynes* v. *Florida Dept. of Juvenile Justice*, 88 F. 4th, 939, 952 (CA11 2023) (Newsom, J., concurring).

*McDonnell Douglas.*" *Id.*, at 946. Our precedent makes clear that the framework is, at most, a "*procedural* device, designed only to establish an order of proof and production" when evaluating circumstantial evidence. *St. Mary's Honor Center* v. *Hicks*, 509 U. S. 502, 521 (1993). Put another way, it is "'merely'" a "'way to evaluate the evidence'" that bears on the ultimate finding of liability. *Aikens*, 460 U. S., at 715. Yet, some courts treat *McDonnell Douglas* as a substantive legal standard that a plaintiff must establish to survive summary judgment or to ultimately prove a claim. See *Tynes*, 88 F. 4th, at 945 (observing that some parties and courts "wrongly treat the prima facie case as a substantive standard of liability").

Some courts also fail to appreciate that *McDonnell Douglas* is necessarily underinclusive. The framework sets forth criteria that, if satisfied, will allow a plaintiff to prove a Title VII violation. But, satisfying *McDonnell Douglas* is not the only way or even the best way to prove a claim. The *McDonnell Douglas* Court itself explained that "[t]he facts necessarily will vary in Title VII cases" and the prima facie proof required in one case "is not necessarily applicable in every respect to differing factual situations." 411 U. S., at 802, n. 13; see also *Furnco Constr. Corp.* v. *Waters*, 438 U. S. 567, 575 (1978) (explaining that *McDonnell Douglas* "was not intended to be an inflexible rule"). Yet, some courts treat the *McDonnell Douglas* framework as the exclusive method for evaluating evidence at summary judgment. As Judge Newsom has ably explained, this practice very likely runs afoul of Federal Rule of Civil Procedure 56. See *Tynes*, 88 F. 4th, at 952–953 (concurring opinion). Rule 56 requires that a claim survive summary judgment so long as the plaintiff proffers enough evidence to allow a reasonable factfinder to decide the case in his favor. Analyzing evidence exclusively under *McDonnell Douglas* may lead a court to overlook the other ways that a plaintiff can prove his claim.

Adding to the confusion, judges appear to have different views on how best to apply the framework at summary judgment. Some courts require a plaintiff to establish a prima facie case at the Rule 56 stage. See, *e.g.*, *Everett* v. *Cook Cty.*, 655 F. 3d 723, 730 (CA7 2011) ("To move past summary judgment under the indirect method, a plaintiff must establish a prima facie case of discrimination"). Other courts have held that, at the summary judgment stage, when an employee has suffered an adverse employment action and the employer has asserted a legitimate, nondiscriminatory reason for the decision, "the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady*, 520 F. 3d, at 494.

A remarkable number of lower court judges have gone out of their way to describe the chaos sown by *McDonnell Douglas*. See, *e.g.*, *Walton* v. *Powell*, 821 F. 3d 1204, 1210 (CA10 2016) (majority opinion of Gorsuch, J.) (*McDonnell Douglas* "has proven of limited value" and invites "confusion and complexities"); *Brady*, 520 F. 3d, at 494 (majority opinion of Kavanaugh, J.) (describing the first step of *McDonnell Douglas* as "a largely unnecessary sideshow" that has "spawn[ed] enormous confusion and wast[ed] litigant and judicial resources"); *Tynes*, 88 F. 4th, at 945 (explaining that *McDonnell Douglas* has caused "continuing confusion"); 88 F. 4th, at 951 (Newsom, J., concurring) (explaining that *McDonnell Douglas* is a "judge-concocted doctrine that obfuscates the critical inquiry" at summary judgment); *Nall*, 917 F. 3d, at 351 (Costa, J., specially concurring) (explaining that *McDonnell Douglas* is a "judge-created doctrine [that] has been widely criticized for its inefficiency and unfairness"); *Coleman* v. *Donahoe*, 667 F. 3d 835, 863 (CA7 2012) (Wood, J., concurring) (asserting that *McDonnell Douglas* has "lost [its] utility" and has "inflicted" "snarls and knots" "on courts and litigants alike"); *Provenzano* v. *LCI Holdings, Inc.*, 663 F. 3d 806, 813 (CA6 2011) (arguing

that *McDonnell Douglas* "often fails to fulfill its purpose" and that this failure "is particularly pronounced in the context of summary judgment"); *Griffith* v. *Des Moines*, 387 F. 3d 733, 746 (CA8 2004) (Magnuson, J., concurring specially) (explaining that *McDonnell Douglas* "has befuddled" the lower courts "[s]ince its inception"); *Wells* v. *Colorado Dept. of Transp.*, 325 F. 3d 1205, 1221 (CA10 2003) (Hartz, J., writing separately) (explaining that "[t]he *McDonnell Douglas* framework only creates confusion and distracts courts from 'the ultimate question'" and that the doctrine "should be abandoned"); *Loeb* v. *Textron, Inc.*, 600 F. 2d 1003, 1016 (CA1 1979) (explaining that "the subtleties of *McDonnell Douglas* are confusing" and "have caused considerable difficulty for judges of all levels"); *Brockbank* v. *U. S. Bancorp*, 506 Fed. Appx. 604, 611 (CA9 2013) (Ripple, J., concurring in part and dissenting in part) (explaining that *McDonnell Douglas* causes confusion for courts); *Paup* v. *Gear Prods., Inc.*, 327 Fed. Appx. 100, 113 (CA10 2009) (*per curiam*) (joined by Gorsuch, J.) (explaining that *McDonnell Douglas* has been criticized for "improperly diverting attention away from the real question"); see also T. Tymkovich, The Problem With Pretext, 85 Denver U. L. Rev. 503, 519–529 (2008) (describing the ways in which *McDonnell Douglas* has caused confusion).

I am not aware of many precedents that have caused more confusion than this one. By my best lights, a Title VII claim should survive summary judgment so long as the plaintiff establishes a genuine dispute of material fact about each element of his claim. See Fed. Rule Civ. Proc. 56(a). I am confident that lower courts know how to apply Rule 56 and make the familiar summary-judgment determination. I am skeptical that *McDonnell Douglas* is helping anyone perform that task.[3]

_____

[3] *McDonnell Douglas* causes confusion beyond the summary-judgment context too. For example, the framework is so confusing that some courts

### III

This case squarely presents the question whether *McDonnell Douglas* should be overruled.  Given the widespread confusion caused by *McDonnell Douglas*, and given the frequency with which courts encounter Title VII cases, it behooves us to revisit *McDonnell Douglas* and offer clear guidance on how to determine whether a Title VII claim survives summary judgment.

This petition provides an opportunity to do so.  Petitioner Ronald Hittle, a devout Christian, served as fire chief for the city of Stockton, California, from 2005 to 2011.  While employed by the city, Hittle's supervisor directed him to attend a leadership training program.  After Hittle did so, his supervisor chastised him for selecting a religious program.  The city then hired an outside investigator to investigate, among other things, Hittle's attendance at this religious leadership training.  The investigator "interrogated Hittle at length" regarding his Christian faith and ultimately found that Hittle had committed misconduct.  101 F. 4th 1000, 1008–1009 (CA9 2024).  According to the investigator, two of the four "most serious acts of misconduct" were: "[i]nappropriate use of City time and a City vehicle to attend a religious event," and "[f]avoritism . . . regarding certain employees of the department in approving their inappropriate attendance on City time of a religious event."  2 Excerpts of Record in No. 22–15485 (CA9), ECF Doc. 26–3, p. 225.  After reviewing the investigator's findings, the city sent Hittle a "notice of its intent to remove him from City service . . . for the reasons stated" in the investigator's re-

———

do not allow any discussion of it in jury instructions.  See, *e.g.*, *Whittington* v. *Nordam Group Inc.*, 429 F. 3d 986, 993 (CA10 2005) ("We have repeatedly stated that juries are not to apply the *McDonnell Douglas* framework"); see also *Vance* v. *Ball State Univ.*, 570 U. S. 421, 444–445, and n. 13 (2013) (emphasizing the confusion caused by *McDonnell Douglas* in the jury-instruction context).

port. 101 F. 4th, at 1010. Hittle sued the city and its leadership, alleging that his termination was the result of unlawful religious discrimination in violation of Title VII.

The District Court analyzed Hittle's claims under the *McDonnell Douglas* framework and entered summary judgment for the City on the ground that Hittle had "not shown sufficient evidence of pretext to survive summary judgment." 2022 WL 616722, *8 (ED Cal., Mar. 2, 2022). The Ninth Circuit affirmed for the same reason—that Hittle had failed to "demonstrate that Defendants' legitimate non-discriminatory reasons for firing him were mere pretext for religious discrimination." 101 F. 4th, at 1017. Both decisions below rested on a purported failure to satisfy a component of *McDonnell Douglas*. Accordingly, this case presents us with an opportunity to revisit *McDonnell Douglas* and decide whether its use at summary judgment comports with Rule 56.

This case highlights how *McDonnell Douglas* may distort a lower court's analysis. Hittle presented "ample" evidence of discriminatory intent on the part of those who decided to terminate him. 101 F. 4th, at 1022 (VanDyke, J., dissenting from denial of rehearing en banc). That evidence is more than likely sufficient for Hittle to establish a genuine dispute of material fact as required by Rule 56. See *id.*, at 1018–1019 (Callahan, J., dissenting from denial of rehearing en banc); *id.*, at 1019 (Ikuta, J., dissenting from denial of rehearing en banc); *id.*, at 1026 (opinion of VanDyke, J.). Yet, after applying *McDonnell Douglas*, the District Court and the Ninth Circuit ruled for the city.

\*　　\*　　\*

I would have taken this opportunity to revisit *McDonnell Douglas* and decide whether its burden-shifting framework remains a workable and useful evidentiary tool. I respectfully dissent from the denial of certiorari.